(No. 33638.—■■■■■■)

IN THE MATTER OF THE ESTATE OF ERNEST C. SCHURE-MAN.—(THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* MASONIC BOARD OF CONTROL OF JACKSON-VILLE *et al.,* Appellees.

*Opinion filed March 22, 1956.*

LATHAM CASTLE, Attorney General, of Springfield, (JOHN L. DAVIDSON, JR., JOHN E. HOWARTH, and MADA-LYN MAXWELL, of counsel,) for the People.

INGHRAM & DITTMEYER, of Quincy, for appellee QUINCY MASONIC TEMPLE ASSOCIATION; and ALBERT W. HALL, of Jacksonville, for appellee Masonic Board of Control of Jacksonville.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The State of Illinois appeals directly to this court from an order of the county court of Adams County finding

certain bequests to the Masonic Board of Control of Jacksonville and the Masonic Temple Association of Quincy exempt from inheritance tax as charitable bequests. The revenue of the State of Illinois being directly involved, the appeal properly comes direct to this court.

The last will of Ernest C. Schureman, deceased, specifically bequeathed the testator's stock in Mercantile Trust and Savings Bank of Quincy to the Masonic Temple Association of Quincy. The residue of the decedent's estate was bequeathed equally to the Masonic Temple Association of Quincy and to the Masonic Board of Control of Jacksonville. In the inheritance tax return the gift to the Masonic Board of Control of Jacksonville, totalling $58,616.43, and the gift to the Quincy Masonic Temple Association, totalling $66,616.43, were each claimed exempt from taxation as charitable gifts.

Insofar as pertinent to the question at issue, section 28 of the Inheritance Tax Act provides: "When the beneficial interests of any property or income therefrom shall pass to or for the use of * * * any * * * benevolent or charitable purpose, * * * by grant, gift, bequest or otherwise, the same shall not be subject to any such duty or tax, but this provision shall not apply to any corporation which has the right to make dividends or distribute profits or assets among its members." Ill. Rev. Stat. 1951, chap. 120, par. 401.

The Quincy Masonic Temple Association, a not-for-profit corporation, is organized solely and exclusively "to erect and maintain a building for Masonic purposes for the Masonic bodies that are stockholders." The stockholding bodies and members are four Masonic lodges, the Consistory, a Chapter of Royal Arch Masons, and the Commandery of Knights Templar. The association has no income except from assessments against its member organizations as their share of the expenses in connection with the use and occupancy of the building and from a bank

deposit. None of the funds received are used for any purpose other than the maintenance, repair and upkeep of the Masonic Temple.

The Jacksonville Masonic Temple building is owned in undivided shares as tenants in common by two Masonic lodges, a Chapter of Royal Arch Masons, and the Commandery of Knights Templar. On the date of death of testator the only organization by the name of Masonic Board of Control of Jacksonville was an unincorporated association composed of individual members of the four owning bodies and affiliated women's organizations. Its sole function was to administer maintenance of the building. It owned nothing and received funds necessary for its purposes by apportioned assessments against each of its member bodies. Seven months after testator's death, the Masonic Board of Control of Jacksonville, Illinois, was incorporated as a not-for-profit corporation, its stated purposes being charitable, benevolent, eleemosynary, educational, civic, patriotic and social. It owns no property and has no income. The unincorporated association had not been dissolved at the time of hearing but the evidence indicates that the corporation will take over the association's functions as well as receive gifts and gratuities and administer them.

The State contends that the testamentary gifts here in question are not for benevolent or charitable purposes because the will does not by its language limit the bequests to the benevolent and charitable activities of the fraternal bodies.

In approaching a tax problem we must bear in mind certain principles of law that are beyond debate in this State: the burden of taxation should fall equally upon all, all exemption statutes must be strictly construed and not extended by judicial interpretation, and those claiming exemption have the burden of clearly establishing the same.

This court has not passed upon the inheritance tax status

of a bequest to fraternal groups such as is involved in this case. Consequently, the State relies primarily upon two decisions of this court holding that real estate owned and managed by Masonic groups is subject to real property taxes. *People ex rel. Nelson* v. *Rockford Masonic Temple Building Association,* 348 Ill. 567; *People ex rel. Thompson* v. *Dixon Masonic Building Association,* 348 Ill. 593.

Each of these cases had in issue the exemption from real property taxes of Masonic Temple buildings held for the sole use and benefit of the several branches of the Masonic order as a place for lodge meetings, the conduct of ritualistic work, fraternal and social purposes. Exemption from such taxation was claimed under section 2 of the Revenue Act then in force, (Smith-Hurd Stat. 1933, chap. 120, par. 2,) which, so far as pertinent, provided as follows: "All property described in this section, to the extent herein limited, shall be exempt from taxation, that is to say: * * * Seventh—All property of * * * beneficent and charitable organizations, * * * when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." Appellees argue that those cases are not necessarily determinative because the language in section 2 requires the property to be used "exclusively for charitable purposes" before exemption is justified, whereas section 28 of the Inheritance Tax Act requires that the property pass simply for a "charitable or benevolent purpose."

Before giving any further consideration to the *Nelson* and *Thompson cases,* let us turn to two other cases. The first of these appellee urges here is an authority for the proposition that a Masonic lodge is necessarily a charitable institution. In *Grand Lodge* v. *Board of Review,* 281 Ill. 480, 483, this language appears: "It has been quite uniformly held by the courts that the primary objects of a Masonic lodge being benevolence and charity, such a lodge is a charitable institution." This broad **pronouncement**

transcended the boundaries of the problem before the court. In that proceeding the Masonic Grand Lodge of the State of Illinois was given 200 acres of land to be used as a part of a Masonic Home owned and maintained by them at Sullivan, Illinois, for the care and support of Master Masons, their widows and orphans unable to earn their own living and without relatives or friends, able and willing to support them. The court was called upon to decide the narrow question as to whether the charity involved being confined to Masons was a public charity. It was held that the Masonic Home is a public charity and it was determined that exemption followed.

Fourteen years later this court decided the case of *People ex rel. Wagner* v. *Freeport Masonic Temple, Inc.,* 347 Ill. 180. Therein the property involved and sought to be exempted from taxes consisted of a building costing $400,000, the title thereto being held for the Freeport Consistory, used and controlled by the Consistory and the branches of the Masonic order in the city of Freeport. The majority opinion held that the property was used for charitable purposes to such an extent that exemption should follow as provided by statute. The building involved in that case is a large structure over 108 feet in length and approximately that in width. Forty per cent of it is used for an auditorium, designed for the ritualistic ceremony of Scottish Rite Masonry. The balance of the building consists of lodge rooms, which are rented to the Masonic Blue Lodges, the Council, the Chapter, the Eastern Star, the Copernaum Shrine, the Boy Builders and the Consistory Auxiliary, a ladies organization, all of which are parts of the Masonic order. There are also offices of the secretary of the corporation as well as a lounge, club rooms, toilets and hallways. In the basement were two dining rooms and a kitchen. The lodge membership totaled 5593 persons, all of whom had access to and rights in the building. The charter of the corporation indicated that its ob-

jects were "to promulgate the teachings of Scottish Rite Masonry and to promote fraternity and benevolence and to purchase, lease, erect and own a masonic temple for its lodge and club rooms." Two justices dissented from the majority opinion, cogently and persuasively holding that there is no validity in the conclusion that every Masonic organization is a charitable organization or that judicial notice can be taken that any Masonic lodge or organization is a charitable institution. They also observed that the holding in the *Grand Lodge case* that every Masonic lodge is a charitable organization was dictum of the purest variety. Within six months this court adopted the views of the dissenting justices and expressly overruled the *Freeport case. People ex rel Nelson* v. *Rockford Masonic Temple Building Association, and People ex rel Thompson* v. *Dixon Masonic Building Association.*

In the *Freeport case* where the activities were similar to those in the case at bar, the dissenting opinion, which soon became the expression of the majority, had this to say in characterizing the lodge purposes, at page 191 : "It appears, therefore, that the object for which the objector is organized is threefold : to promulgate the teachings of Scottish Rite Masonry, to promote fraternity and benevolence, and to purchase, lease, erect and own a masonic temple for its lodge and club rooms. The latter object can hardly be regarded as a charitable purpose—the purchase, construction and maintenance of a building for its own purposes, for its lodge and club rooms. Nor can we take judicial notice that the promulgation of the teachings of Scottish Rite Masonry is a charitable purpose. We may doubtless take judicial notice that Freemasonry is a widely extended secret fraternal organization of very high and ancient origin, but the very fact that it is a secret organization, with an esoteric ritual and ceremonies and teachings designed for and understood by the initiated only, precludes the courts from taking judicial notice of the character of

the objector, whether charitable or otherwise. Judges, even if members of the order, cannot take judicial notice of that which they know because they are members—which the general public does not know. To promote fraternity and benevolence is too vague and indefinite a description of an object to constitute a charity. A charitable purpose must refer to some specific form of conduct or course of action tending to promote the well-doing and well-being of social men."

In *People* v. *O'Donnell,* 327 Ill. 474, the court in construing section 28 of the Illinois Inheritance Tax Act said at page 475: "The act is purely a revenue-producing measure, and it is not to be assumed that the legislature surrendered the revenue of the State without some compensation. The theory of exempting from taxation property devoted to religious, educational and charitable uses is that the beneficences bestowed relieve the State of burdens which it would otherwise be obliged to carry. Where the property, or the income from it, is devoted to such religious, educational or charitable uses within the State, the State is compensated for its loss of revenue by its relief from the burden which would otherwise fall upon it and which it would have to meet by appropriations from the public fund, * * *." In the *Grand Lodge case* this court held that the Masonic Home at Sullivan was a public charity, and stated at page 485, "* * * but if it operates upon indefinite persons whose care and support rest upon the public the effect is to afford relief from the public burden and the charity is public in its nature."

Another quote from the *O'Donnell case* at page 477 can be appropriately mentioned: "* * * 'The State is not itself a charitable institution, and does not authorize its representatives to expend the public money, by exemptions from taxation or otherwise, for purposes having little or no relation to the welfare of the inhabitants of the State. The purpose of such laws is the acquisition of some sup-

posed public advantage. If it is impossible to see how the public good of the State is promoted by a claimed exemption from the tax burden, it cannot be inferred that the legislature intended such a result from language which does not necessarily require such a construction.' In *Morgan* v. *Atchison, Topeka and Santa Fe Railway Co.* 116 *Kan.* 175, 225 Pac. 1029, the Supreme Court of Kansas says: 'Taxes must be raised for the support and conduct of the government. Exemption to charitable, educational and religious organizations is bottomed upon the fact that they render service to the State, for which reason they are relieved of certain burdens of taxation. The effect of an exemption is equivalent to an appropriation.' * * * "

The record in this case shows that the lodges were not engaged in practical charity as their principal object. It may well be that in Masonry, its members in their ceremonials, are instructed in the precepts of duty to others and in kindliness and fraternal feeling, but courts generally have not given the words "charitable purposes" such broad signification.

In the case of *Scottish Rite Building Co.* v. *Lancaster County,* 106 Neb. 95, the exemption of the Scottish Rite Cathedral of Lincoln, Nebraska, was urged under the applicable statute, thus worded: "The following property shall be exempt from taxes: First, all property of the State, counties, and municipal corporations; second, such other property as may be used exclusively for agricultural and horticultural societies, for schools, religious, cemetery and charitable purposes." In refusing exemption the court held that the words "charitable purposes" were not intended to have so broad a signification and were not intended to include the expression or inculcation of charitable sentiments, thereby giving a merely subjective meaning to the words "charitable purposes," but what those words meant was concrete, practical, objective charity, manifested by things actually done for the relief of the unfortunate and

the alleviation of suffering or in some work of practical philanthropy, as contrasted with the sentimental or ethical standpoint.

Applying the foregoing principles of law to the facts appearing in this record we have reached the conclusion that the testamentary gifts under consideration are not entitled to exemption by virtue of section 28 of the Inheritance Tax Act. The order of the county court of Adams County is reversed.

*Order reversed.*