DAVID MARTY, County Collector, Plaintiff-Appellee, *v.* LEO BROWN, *et al.*, Defendants-Appellants.

(No. 75-90;

Fifth District—December 17, 1975.

Martin J. Corbell, of Vandalia, for appellants.

John C. Reznick, State's Attorney, and Robert G. Burnside, of Burnside, Dees and Johnston, both of Vandalia, for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

This appeal is from the order of the Circuit Court of Fayette County overruling the objections of appellants to the application of the treasurer and ex officio county collector for judgment for taxes and sale of delinquent real estate for nonpayment of real estate taxes assessed against appellants' leaseholds for the 1972 tax year, payable in 1973.

Appellants are four sublessees of lots on Lake Vandalia in Fayette County. The lake is owned by the city of Vandalia. It lies outside the corporate limits of the city and was developed as a muncipal water reservoir. The property surrounding the lake is also owned by the city. A portion of this land and the lake itself have been devoted to recreational purposes. The lots here in question are part of tracts leased in 1968 by the city for a term of 99 years to a development company which in turn platted the tracts into lots and subleased certain lots to the appellants for the balance of the 99-year term remaining. Two of the appellants have improved their leaseholds with residential and clubhouse structures.

The lease to the development company and the subleases to appellants are silent as to payment of *ad valorem* property taxes that might be assessed and levied against the property. The property was acquired by the city of Vandalia beginning in 1962, and the lake completed in 1972. The entire lake property owned by the city was exempt from taxation under section 19.6 of the Revenue Act of 1939 as a municipal water works. (Ill. Rev. Stat. 1971, ch. 120, par. 500.6.) Such exemption would be entirely proper. (*City of Lawrenceville v. Maxwell*, 6 Ill.2d 42, 126 N.E.2d 671 (1955).) It is the primary use to which property is put that determines its exempt status.

The sublessee of each lot pays $75 annually to the city of Vandalia "lake recreation fund." Other commissions, rentals and license fees derived from the lake property, concessions and dock and boat licenses are placed in this fund, and it is used for lake improvements, roads and maintenance. No city tax revenues are appropriated, levied or expended for these purposes, nor has Fayette County expended tax revenues for any improvements at the lake.

All the platted lots in the tracts leased to the development company, whether subleased, improved or unimproved were first listed in the name of the city of Vandalia as owner for the 1971 quadrennial assessment year and were accordingly assessed in the name of the city on the assessor's rolls. Prior to 1971, none of the tracts or lots were listed or assessed for taxation. In 1971, publication in the name of the city as owner was made as required by section 103 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 584).

Section 26 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 507) provides: "When real estate which is exempt from taxation is leased to another whose property is not exempt, * * * the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, as real estate." A 1969 amendment to this section was held unconstitutional in *Dee-El Garage, Inc. v. Korzen*, 53 Ill.2d 1, 289 N.E.2d 431 (1972), but the court further held that the effect of the unconstitutionality of the statute as amended was to restore the prior law, quoted above, in effect.

We note that the assessing authorities had not treated these lots as exempt in the 1971 quadrennial year since they were listed and assessed in the name of the city of Vandalia as owner, and while they undoubtedly could have listed them as property of the lessee or sublessees and assessed the leasehold estates for tax purposes, they did not do so at the time of the quadrennial assessment. In fact, the city paid the taxes levied against those lots leased to the development company but not subleased to individual users for the 1972 tax year after the assessed values on these lots had been greatly reduced by the improper usage of a certificate of error, contrary to the express prohibition of sections 45 and 108 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, pars. 526, 589). No taxes levied against the other subleased lots were paid in 1971 by the city, nor was any effort made to list or assess these lots to the lessee, the development company, or the sublessees.

At the hearing on the objections, the supervisor of assessments testified that for 1972, the tax year here in question, the lots and improvements were assessed as leaseholds by the township assessor, as authorized in section 26 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 507), in the names of the appellants-objectors, but in a most irregular manner as will become apparent. In fact, from the testimony of the supervisor of assessments it would appear that the changes in assessment were made without his knowledge or concurrence. While section 46 of the Act was amended by Public Act 77—556, effective July 31, 1971, to allow assessors in counties of less than 150,000 to revise assessments in any year (Ill. Rev. Stat. 1973, ch. 120, par. 527), other pertinent sections of the Act would indicate that such changes in assessment should be at least noted by the supervisor of assessments (Ill. Rev. Stat. 1973, ch. 120, pars. 575, 576). He testified further, however, that no notice of a change in the listing of ownership, or name in which the leaseholds were assessed, or the placing of the improvements on the assessment rolls was ever given to the objectors by the assessor, or by his office or by the board of review of Fayette County, which he served as clerk, nor was any publication made as provided in section 103 of the Act (Ill. Rev. Stat.

1971, ch. 120, par. 584). He testified that the board of review had placed certain improvements on the assessment roles, and any notice that might have been given would have been sent in September, 1972, by the board of review to the city clerk of the city of Vandalia, in which name the lots were listed and assessed in the quadrennial assessment and in 1972.

He further testified that he was given a list of certain lake lots by the Vandalia city attorney and the Fayette County State's attorney prior to mailing of tax bills, apparently in 1973, and instructed to change the ownership of numerous lots and improvements, including the lots subleased by these objectors by listing these lots in the names of appellants for the first time on the assessment rolls. In June, 1973, long after the board of review had concluded its work (Ill Rev. Stat. 1971, ch. 120, pars. 588, 592), tax bills were mailed to these objectors. This was the first notification that the lots and improvements had been listed and assessed as leaseholds in appellants' names, that improvements had been added to the rolls and that the total assessed valuation had been increased in each instance.

■■ While the objectors raise many issues for review, we think the case may be disposed of on the absolute failure of the assessing authorities of Fayette County to attempt even token compliance with those sections of the Revenue Act requiring notice to a property owner of a change in the assessment of his property. (Ill. Rev. Stat. 1971, ch. 120, par. 588.) We say "his" property since the Revenue Act contemplates that municipally owned exempt property is properly assessed and taxed to the holder of a leasehold estate, or his assign, as if he were the record owner thereof. *People ex rel. Korzen v. American Airlines, Inc.*, 39 Ill.2d 11, 233 N.E.2d 568 (1967).

■■ Section 44 of the Revenue Act governs assessment of real property in intervening years between quadrennial assessments. (Ill. Rev. Stat. 1971, ch. 120, par. 525.) It provides that the assessor shall list and assess all real property, including improvements which shall become taxable, and while improvements omitted from assessment can be assessed at any time by the board of review (*People ex rel. McDonough v. Birtman Electric Co.* (1934), 359 Ill. 143, 194 N.E. 282), we believe that the irregular procedure employed here is entirely without precedent or sanction in law. (Ill. Rev. Stat. 1971, ch. 120, pars. 701-703.) The Revenue Act requires the board of review to list and assess omitted property and improvements and property defectively described or assessed. (Ill. Rev. Stat. 1971, ch. 120, par. 589.) It does not authorize city attorneys or State's attorneys to act as informal assessors. The Act further provides that in no case shall the assessment of the property of any person be in-

creased unless he shall first have been notified in writing and been given an opportunity to be heard.

■■ The collector argues that appellants should have complained to the assessing authorities and exhausted their administrative remedies. We find this argument without merit since the first notice these taxpayers received was a tax bill from the county treasurer's office long after the board of review had closed its books on the tax year in question. (*People ex rel. Shirk v. Glass*, 9 Ill.2d 302, 137 N.E.2d 265 (1956); see *Hoyne Savings & Loan Association v. Hare*, 60 Ill.2d 84, 322 N.E.2d 833 (1974).) It is clear that the Revenue Act requires some notice to a taxpayer and opportunity to be heard before his property is placed on the assessment rolls or his assessment is increased in a year intervening the quadrennial year. (Ill. Rev. Stat. 1971, ch. 120, pars. 701, 702.) *People ex rel. Stuckart v. Shortall*, 287 Ill. 150, 122 N.E. 60 (1919); *Lindheimer v. Nelson*, 369 Ill. 312, 16 N.E.2d 734 (1938).

We are aware that the Act states that no assessment is invalid because of an incorrect listing of ownership. (Ill. Rev. Stat. 1971, ch. 120, par. 587.) Perhaps this provision and a literal reading of section 314 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 795) would appear to lend support to the argument that the failure to give notice as required by the Act does not impair the validity of any assessment. Our courts, however, have never interpreted these provisions in this manner. *People ex rel. Bracher v. Abraham*, 295 Ill. 582, 129 N.E. 511 (1921).

■■ Section 106 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 587), which provides that no assessment is invalid because incorrectly listed or because not listed in the name of the true owner, is a reasonable and necessary provision when properly applied for no record title holder of real property should escape taxation simply because he failed to receive a tax bill that might be sent to his predecessor in title from whom he might have acquired title. Such a person is charged with a duty to investigate and make inquiry as to the assessment of his property and the nonreceipt of a tax bill, should this occur. This is not the instant case, however. The property here involved was not incorrectly listed as it was listed and assessed in the quadrennial assessment in the name of the record title, the city of Vandalia.

Each of the appellants-objectors paid $75 annually for each lot subleased to the city of Vandalia "lake recreation fund" which they might reasonably assume was to defray any tax that might be levied against the lots subleased by them. If they had examined the books in the supervisor of assessment's office at any time during 1971 or 1972, this assumption would have been confirmed, as they would have discovered that the lots subleased by them were listed and assessed in the name of the city.

In each instance the improvements were added to the assessment rolls, as we have noted, without any notice from the assessor, supervisor of assessment or board of review, and without any opportunity to be heard as to the valuation thereof in clear violation of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, pars. 525, 589) and uniform precedents of our courts.

While leasehold estates are subject to assessment and taxation, we do not believe the Revenue Act authorizes such casual or arbitrary action on the part of the officials charged with the duty of administering the tax laws. (*Cf. Budberg v. County of Sangamon*, 4 Ill.2d 518, 123 N.E.2d 479 (1955).) In fact, we are unable to find any attempt to assess properly the lots here involved in the names of the sublessees, and while the board of review made some effort to assess the improvements of two of the appellants-objectors as leaseholders and list them accordingly, it did so without any notice to them that would afford them an opportunity to be heard.

The language of Judge Cooley, quoted in *City of Lawrenceville v. Maxwell*, is here appropriate:

" 'We should say that notice of proceedings in such cases and an opportunity for a hearing of some description were matters of constitutional right. It has been customary to provide for them as a part of what is "due process of law" for these cases; and it is not assumed that constitutional provisions, carefully framed for the protection of property, were intended or could be construed to sanction legislation under which officers might secretly assess one for any amount, in their discretion, without giving him an opportunity to contest the justness of the assessment. It has often been very pointedly and emphatically declared that it is contrary to the first principles of justice that one should be condemned unheard; and it has also been justly observed of taxing officers, that it would be a dangerous precedent to hold that any absolute power resides in them to tax as they may choose, without the giving of any notice to the owner; * * *. It is not customary to provide the taxpayer shall be heard before the assessment is made, but a hearing given afterwards, either before the assessors themselves or before some court or board of review. And of the meeting of that court or board of review the taxpayer must in some manner be informed, either by personal notice or by some general notice which is reasonably certain to reach him or which is equivalent, by some general law which fixes the time and place of meeting and of which he was [to] take notice. The last is a common method of enabling him to be heard.' (Cooley on Taxation, 266.)." 6 Ill.2d 42, 51, 126 N.E.2d 671, 677.

■■ This principle, that both statute and due process require notice and an opportunity to be heard before a property owner's liability to pay the tax becomes fixed, has repeatedly been reaffirmed by our courts. *Dietman v. Hunter*, 5 Ill.2d 486, 126 N.E.2d 22 (1955); *Exchange National Bank of Chicago v. Cullerton*, 20 Ill.App.3d 370, 314 N.E.2d 271 (1974). ■■ Omitted property may be assessed as provided in section 108 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 589(1); *People ex rel. Shirk v. Glass; People ex rel. McDonough v. Birtman Electric Co.*) Section 44 of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 525) sets forth the procedure to be employed for the assessment of property and improvements becoming taxable in years other than the year of the quadrennial assessment. (*People ex rel. Schuler v. Chapman*, 370 Ill. 430, 19 N.E.2d 351 (1939).) In either event proper notice and opportunity to be heard are prerequisites to a valid assessment.

We have taken with the case a motion of the collector to dismiss the appeal for failure of appellants to file an abstract or excerpts as required by Supreme Court Rule 342. Ill. Rev. Stat. 1973, ch. 110A, par. 342.

A document designated as excerpts from the record has been filed, but it contains no part of the report of proceedings and is woefully deficient in numerous respects. We would be justified in granting the motion and dismissing the appeal as we have recently stated in *Shaw v. Kronst*, 9 Ill.App.3d 807, 293 N.E.2d 153 (1973), and *Ahlvers v. Terminal Railroad Association*, 31 Ill.App.3d 166, 334 N.E.2d 329 (1975).

■■ We once again remind counsel of the importance of compliance with the rules of appellate procedure, but will exercise our discretion to entertain the instant appeal because of the importance we perceive in the compliance with the Revenue Act by elected and appointed county officials and the obvious lack of wilful noncompliance on the part of appellants.

The objections to the 1972 assessments should have been sustained and the judgment of Circuit Court of Fayette County is reversed and the cause remanded with instructions to allow the objections and order the refund of the 1972 taxes paid under protest.

Reversed and remanded.

EBERSPACHER and G. MORAN, JJ., concur.