*In re* APPLICATION OF EDWARD J. ROSEWELL, County Treasurer.— (EDWARD J. ROSEWELL, County Treasurer and Ex Officio County Collector of Cook County, Applicant-Appellee, *v.* BULK TERMINALS COMPANY *et al.*, Objectors-Appellants.)

First District (2nd Division)   Nos. 78-748 through 78-750 cons.

Opinion filed May 22, 1979.

Flanagan, Bilton and Brannigan and Goldstick, Smith and Bolton, both of Chicago (Dean H. Bilton and Phillip C. Goldstick, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

These consolidated appeals arise from judgments of the circuit court of Cook County denying the relief sought by appellants, Bulk Terminals Company (Bulk) and North Pier Terminals Company (North Pier), in specific objections to the Cook County collector's application for judgment and for the determination of the correct amount of 1973 real estate taxes paid under protest. The principal issues on appeal are: (1) whether the assessor's imposition in 1973 of a back tax on the leasehold estates of Bulk and North Pier for the tax years 1971 and 1972 is valid; and (2) whether the 1973 assessed value of Bulk's leasehold interest is excessive and constructively fraudulent.[1] The pertinent facts follow.

Bulk and North Pier are lessees of real property from the Chicago Regional Port District. Section 19.19 of the Revenue Act of 1939 exempts from taxation all property owned by that or any other port district created by the legislature, "* * * provided that a tax may be levied upon a lessee of such a District by reason of the value of a leasehold estate separate and apart from the fee, or upon such improvements as are constructed and owned by others than the Port District." (Ill. Rev. Stat. 1973, ch. 120, par. 500.19.) Pursuant to section 19.19, in 1970, 1971, and 1972, all the real property owned by the Port District was listed on the tax records of Cook County as "Vol. 293, Permanent Index Number 25-26-600-001-000 (Ex. Leasehold estates and Improvements)" and the fee or reversionary interest of this parcel was marked exempt.

Prior to tax years 1971 and 1972, the assessor made assessments on Bulk and North Pier's leasehold interests pursuant to section 26 of the Revenue Act of 1939, which provides:

"When real estate which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which

---

[1] North Pier was granted relief as to the 1973 valuation of its leasehold interest, and no appeal has been taken on this issue.

does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, as real estate." Ill. Rev. Stat. 1967, ch. 120, par. 507.

For tax years 1971 and 1972, however, the assessor relied in making his assessments on section 26 of the Revenue Act as amended effective September 16, 1969. Amended section 26 provided:

"When any real property which for any reason is exempt from taxation or is for any other reason not taxed under the provisions of this Act is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation for a use which is not otherwise exempt under the provisions of Section 19, that use is subject to taxation to be paid by the lessee or occupant thereof in the same manner and to the same extent as though the lessee or occupant were the owner of the property. The taxes shall be assessed to the lessees or occupants of that property and collected in the same manner as herein provided, excepting, however, that such taxes do not become a lien against the exempt real property. When due, the taxes under this Section constitute an actionable debt and upon collection the proceeds shall be distributed as provided in Section 280." (Ill. Rev. Stat. 1969, ch. 120, par. 507.)

At trial, Theodore Swain, chief deputy assessor, testified that in 1971 and 1972, the reversionary interests in property leased by exempt lessors were assigned permanent index numbers ending in -8001 in Volume 293 and were marked exempt, while the leasehold interests were assigned index numbers ending in -8002 or higher in a separate tax volume created to implement the use tax, Volume 608, and were accompanied by assessed values. However, the parties later entered into a stipulation of facts stating that Swain's testimony (of which this is only a part) was given without knowledge of all the facts and that any inconsistency between the testimony and the stipulation was to be resolved in favor of the stipulation. The stipulation does not reflect so literal a division into reversionary and leasehold interests. Nevertheless, the stipulation does reveal that the leased parcels were each assigned an index number in Volume 293, ending in -8001, which number was marked "Exempt," as well as an index number in Volume 608, ending in -8002, which number was marked "(Use Tax On)" and next to which there appear assessed values.

On October 2, 1972, the Illinois Supreme Court issued its opinion in *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1, 289 N.E.2d 431, holding amended section 26 unconstitutional. Although the court expressly held that the provision for taxing leasehold interests in exempt property as contained in section 26 prior to the 1969 amendment at all times remained

in effect, the court declined to consider the question of the authority of the taxing officials to impose a back tax on the leasehold interests. The assessor was enjoined from assessing, extending, or collecting taxes based on amended section 26, and the funds collected under the invalid section were eventually refunded.

Following the decision in *Dee-El Garage*, the assessor sent notice to various lessees of real property from exempt lessors, informing them that they would be "subjected to a back tax for use tax years." In the case at bar, notice was sent to Thomas Flanagan, one of the attorneys for Bulk and North Pier, on April 10, 1974. The notice described the parcels in question, the years for the proposed back taxes, and a date and time at which a hearing on the matter would be conducted at the assessor's office. In response to the notice, attorney Flanagan and his partner met with Chief Deputy Assessor Swain and an attorney for the assessor two or three times in order to discuss the proposed back tax. Much of the discussion revolved around the applicability of the valuation method established in *People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 233 N.E.2d 568, but the parties were unable to reach any agreement.

On August 28, 1973, as required by section 97 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 578), the assessor certified the completion of the assessments and sent Volume 293 of the assessment books to the board of appeals. The back tax assessments were not then included in the assessment books. On or about June 8, 1974, the assessor and the board of appeals executed joint affidavits certifying the assessment books in accord with section 125 of the Act. (Ill. Rev. Stat. 1973, ch. 120, par. 606.) Sometime after June 18, 1974, the assessor inserted the instant back tax assessments for 1971 and 1972 in the 1973 assessment books. Back tax bills were issued to Bulk and North Pier on or about November 1, 1974. On December 5, 1974, the assessor certified that the additional sheets containing the back tax assessments were inserted at the direction of the county clerk subsequent to the date of the original certification of the books by the assessor and the board of appeals.

Bulk and North Pier paid the back tax bills and filed the instant specific objections on December 6, 1974. After hearing evidence the trial court made findings and entered orders granting North Pier valuation relief but otherwise denying all relief sought. From these orders, Bulk and North Pier have brought the instant appeal.

The first issue is whether the assessor was authorized to make the back tax assessments involved in this case. Section 220 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 701) provides in part:

> "If any real or personal property is omitted in the assessment of any year or number of years, so that the taxes thereon, for which

such property was liable, have not been paid, or if any such property, by reason of defective description or assessment thereon, fails to pay taxes for any year or years, in either case the same property, when discovered, shall be listed and assessed by the board of review or, in counties having a board of appeals, by the assessor either on his own initiative or when so directed by the board of appeals. For purposes of this Section, 'defective description or assessment' includes a description or assessment of real property which omits all the improvements thereon as a result of which part of the taxes on the total value of the real estate as improved remain unpaid."

Bulk and North Pier contend that the property in question was not "omitted" from the 1971 and 1972 assessments. Rather, they assert that the entire property and all interests therein, including their leasehold interests, were assessed as exempt. Under the applicable case law, they argue, property so assessed may not be reassessed and back taxed, and therefore the back taxes are invalid.

The Collector points out that under section 220 of the Revenue Act, the back tax assessments would be authorized if the property in question was omitted from assessment or was defectively described or assessed. The Collector contends that the back taxes in the case at bar may be sustained on either ground. We agree.

■■ Prior to 1971, the leasehold interests of Bulk and North Pier were taxed under section 26 of the Revenue Act of 1939. (Ill. Rev. Stat. 1967, ch. 120, par. 507.) In 1971 and 1972, the assessor sought to assess their leasehold interests pursuant to amended section 26. (Ill. Rev. Stat. 1969, ch. 120, par. 507.) However, that section was declared invalid in *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1, 289 N.E.2d 431. While the court in that case declined to consider the issue of the authority of the assessor to impose a back tax for the years during which the invalid use tax was levied, the court held that the provisions of section 26 as they existed prior to the 1969 amendment remained in effect. Thus, the leasehold interests were, and are, taxable under section 26 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 507; see *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 543, 546, 343 N.E.2d 507), but until the instant back tax assessments were made, the leasehold interests had not been so taxed. Whether we view the assessor's abortive attempt to assess pursuant to amended section 26 and his resulting failure to assess pursuant to section 26 as an omission of property from assessment or as a defective assessment of property liable to be taxed, in either case the assessor would be authorized to assess the property under section 220 of the Revenue Act of 1939. Ill. Rev. Stat. 1973, ch. 120, par. 701; *cf. Kelly v. Jones* (1919), 290 Ill. 375, 125 N.E. 334.

This interpretation is in harmony with the general principle that "[t]ax laws ought to be given a reasonable construction without bias or prejudice against either the taxpayer or the State, in order to carry out the intention of the legislature and further the important public interest that such statutes subserve." (*Goodfriend v. Board of Appeals* (1973), 18 Ill. App. 3d 412, 421, 305 N.E.2d 404.) It obviously furthers the clear design of section 26 to tax leasehold interests in tax-exempt properties. (See *People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 14, 233 N.E.2d 568.) More specifically, this interpretation effectuates the plain intent of section 220 to provide for omitted property assessments where property which is liable to be taxed has failed to pay taxes (see Ill. Rev. Stat. 1973, ch. 120, par. 701), thus promoting the policy that the burden of taxation should fall equally on all (*In re Estate of Schureman* (1956), 8 Ill. 2d 125, 127, 133 N.E.2d 7), so that one taxpayer's failure to meet his obligation will not increase the burden imposed upon other taxpayers. (*Nix v. Smith* (1965), 32 Ill. 2d 465, 471, 207 N.E.2d 460.) Finally, this result is in accord with analogous holdings and dicta in this and other States permitting omitted property assessments after initial assessments have been declared invalid or void. See *Kelly v. Jones* (1919), 290 Ill. 375, 125 N.E. 334; *Colvard v. Ridley* (1963), 219 Ga. 361, 133 S.E.2d 364; *City of Detroit v. Fruehauf Trailer Co.* (1954), 339 Mich. 256, 63 N.W.2d 666; *In re Blatt* (N.M. 1937), 67 P.2d 293; *Clark v. Lincoln County* (Tenn. App. 1964), 387 S.W.2d 360; *Federal Land Bank of Houston v. State* (Tex. Civ. App. 1958), 314 S.W.2d 621, *rev'd in part on other grounds* (Tex. 1959), 329 S.W.2d 847; *King County v. Rea* (Wash. 1944), 152 P.2d 310; *State ex rel. Baker v. Haugen* (1916), 164 Wis. 443, 160 N.W. 269.

Without directly addressing the applicability of section 220 to the case at bar, Bulk and North Pier contend that the property in issue was assessed as exempt; relying on *People ex rel. Harding v. Atwater* (1936), 362 Ill. 546, 1 N.E.2d 46, and *Hoffman v. Northwestern University* (1976), 40 Ill. App. 3d 1012, 353 N.E.2d 347, they contend that the assessor was without authority to levy back taxes on property that had been so assessed.

On the other hand, as the Collector points out, the trial court expressly found that Bulk and North Pier's leasehold interests were not assessed as exempt, and that finding should not be disturbed unless it is against the manifest weight of the evidence. (*E.g., Mayer Paving & Asphalt Co. v. Carl A. Morse, Inc.* (1977), 48 Ill. App. 3d 73, 79, 365 N.E.2d 360.) With that in mind, we will review the evidence.

The stipulation of facts entered into by the parties reflects that in 1970 the reversionary interest only of the entire Calumet Harbor area owned by the Port District was marked exempt, while the leasehold interest only of the particular parcels leased by Bulk and North Pier appeared in

Volume 293 of the tax rolls accompanied by assessed values. For the years 1971 and 1972, once again the reversionary interest only of the entire harbor area was marked exempt. However, the particular parcels leased by Bulk and North Pier were now assigned two index numbers, one in Volume 293, ending in -8001, and marked exempt, and one in new Volume 608, ending in -8002, accompanied by assessed values, and marked "(Use Tax On)." Chief Deputy Assessor Swain testified that the suffix -8001 referred to the exempt reversionary interests while the suffix -8002 identified the taxable leasehold interests.

Based on this evidence, the trial court found *inter alia* that the leasehold interests, having been assessed under a void statute, had been defectively assessed, and the court concluded:

> "That there was a double assessment of the exempt interest of the Chicago Port District for the years 1971 and 1972, but by reason of the exclusion of leasehold estates and improvements from Index No. 25-26-600-001-000 [the index number assigned to the entire harbor area owned by the Port District] and by reason of the differentiation of meaning between the '8001' and 8002' supplemental digits, the premises involved herein were not included in any assessment of property as exempt."

We cannot find this to be manifestly erroneous. Bulk and North Pier strenuously urge that the trial court erred in ignoring the portion of the stipulation which provided that any inconsistency between Swain's testimony and the facts as stipulated should be resolved in favor of the stipulation. However, the pertinent portion of Swain's testimony appears to be explanatory or descriptive of, rather than inconsistent with, the facts as stipulated, and therefore properly subject to consideration. Moreover, even without regard to Swain's testimony, we believe that the trial court's finding is supported by the facts as stipulated and the inferences that may fairly be drawn from those facts. Because we have concluded that the trial court's finding that the leasehold interests were not assessed as exempt is not manifestly erroneous, we need not consider the applicability and viability of those cases holding that property may not be reassessed and back taxed for years in which it was erroneously marked exempt. But see *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 343 N.E.2d 507 (discussed *infra*) (suggesting that as a matter of power, the assessor did have the authority to make the back tax assessments complained of at bar).

The next issue is whether the entry of the back tax assessments in the 1973 assessment books after they had been certified by the assessor and the board of appeals renders the assessments invalid. Section 97 of the Revenue Act of 1939 provides in part as follows:

> "When the county assessor has completed such revision and

correction and entered the changes and revision in the assessment books, an affidavit shall be appended to each of such assessment books in the form required by law, signed by the county assessor. *After the signing of such affidavit the county assessor shall have power*, when directed by the board of appeals pursuant to Section 113 of this Act, or *on his own initiative, to assess properties which may have been omitted from assessments for the current year or during any year or number of years for which such property was liable to be taxed, and for which such tax has not been paid, but only on notice and an opportunity to be heard in the manner and form required by law, and shall enter such assessments upon the assessment books.* The assessor shall have no power to change the assessment or alter the assessment books in any other manner or for any other purpose so as to change or affect the taxes in that year, except as ordered by the board of appeals. * * *" (Emphasis added.)

In *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 343 N.E.2d 507, our supreme court had occasion to consider the applicability of this statutory language to the instant back tax assessments. Distinguishing the cases cited by the lessees therein and by Bulk and North Pier on this appeal (*Barkley v. Dale* (1905), 213 Ill. 614, 73 N.E. 325; *C. P. Kimball & Co. v. O'Connell* (1914), 263 Ill. 232, 104 N.E. 1029; and *People ex rel. Brecheisen v. Board of Review* (1936), 363 Ill. 106, 1 N.E.2d 402), on the ground that the legislature has not specified a period of time within which the assessor must perform his duties, the court held that the assessor has the authority under section 97 to make assessments of omitted property *even after the assessment books have been certified by the assessor and the board of appeals.* However, the court emphasized that it was only discussing the power of the assessor to function, and not the question of the validity of the instant back tax assessments as affected by any procedural irregularities in the assessment process which section 97 might authorize. Because the back taxes levied were not "unauthorized by law," the court in *North Pier* held that there was no basis for equitable relief.[2] The plaintiffs were relegated to their remedy at law, which Bulk and North Pier have pursued in the case at bar, that of paying the taxes under protest and filing objections to the application for judgment.

---

[2] There is some question whether the opinion in *North Pier* does not implicitly foreclose Bulk and North Pier's initial contention, which we have already rejected, that the instant assessments were assessments of exempt rather than omitted property. In *North Pier*, the plaintiffs were seeking injunctive relief. The court noted that where a taxpayer's remedy at law is otherwise adequate, equity will not assume jurisdiction unless the tax is (1) unauthorized by law or (2) is levied on exempt property. (*North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 545-46, 343 N.E.2d 507.) The court then decided that the assessments were not unauthorized by law because they were authorized by section 97; since the portion

The only section 97 "procedural irregularity" which Bulk and North Pier have alleged as bearing on the validity of the instant back tax assessments is that section 97 authorizes insertion of omitted property assessments by the assessor after the assessment books have been certified by the assessor and the board of appeals. Since this can take place after the board of appeals has adjourned, the taxpayer may be precluded from having his omitted property assessment reviewed by the board of appeals, which, Bulk and North Pier contend, deprives the taxpayer of the right to review established in section 121 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 602) as follows: "* * * The assessment of omitted property by the county assessor may be reviewed by the board of appeals in the same manner as other assessments are reviewed under the provisions of this Act and when so reviewed such assessment shall not thereafter be subject to review by any succeeding board. * * *" See also section 113 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 594) (dealing with board of appeals review of assessments in general).

■■ Although section 121 does generally provide for board of appeals review of omitted property assessments, as the trial court noted, by specifically providing in section 97 that the assessor may make omitted property assessments after the assessment books have been certified and delivered to the board of appeals, the legislature must have contemplated that there need not be review of the assessor's action in all cases, because the board of appeals must adjourn by a fixed date after the delivery of the books, while there is no date fixed for the assessor to complete his duties. (See section 125 of the Revenue Act, Ill. Rev. Stat. 1973, ch. 120, par. 606.) Moreover, Bulk and North Pier have cited no cases to support their position that a tax is completely invalid and a refund is warranted because assessment officials made the disputed assessments after the reviewing body had adjourned; *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, 322 N.E.2d 833, suggests to the contrary. In addition, the legislature has elsewhere in the Revenue Act expressed the intent that assessments should not be considered illegal on account of irregularities not affecting the substantial justice of the tax itself, such as not having been made within the time required by law. (Ill. Rev. Stat. 1973, ch. 120, pars. 716, 797; see *People v. Kimmel* (1926), 323 Ill. 261, 154 N.E. 97.) We find no merit in Bulk and North Pier's claim that the back tax assessments

---

of section 97 relied upon by the court deals with omitted property assessments, we question whether this did not establish that the instant assessments were of omitted rather than exempt property. Secondly, we note that the other possible basis for equitable relief, that the tax is levied on exempt property, was not even discussed by the court in *North Pier*, reinforcing the conclusion that the property in question had not been assessed as exempt but rather had been omitted from assessment. Nevertheless, because the court in *North Pier* expressly intended to limit its decision, we have considered this and all of Bulk and North Pier's contentions on the merits.

were rendered invalid due to a deprivation of any statutory right to review.

Bulk and North Pier also contend that their constitutional rights were violated by the assessor's completion of omitted property assessments after the board of appeals had adjourned, thereby precluding board of appeals review. In *Winona & St. Peter Land Co. v. Minnesota* (1895), 159 U.S. 526, 40 L. Ed. 247, the court discussed a State system of taxation providing for administrative review of current but not omitted assessments. The court stated: "[i]n the one case there is an assessment by one officer, with a right to review his action; in the other, there is an assessment by a different officer, and no provision for a review except as the matter comes before the court in the proceedings for the collection of taxes. But there is nothing in this difference to affect the constitutional rights of a party." (159 U.S. 526, 538, 40 L. Ed. 247, 252.) Neither is there anything in *Board of Education v. County Board of School Trustees* (1963), 28 Ill. 2d 15, 191 N.E.2d 65, a factually dissimilar case, that supports a different view. On the contrary, in that case the court stated: "The right of appeal is not essential to due process, and is one which may or may not be granted in a given situation as the legislature deems appropriate. * * * But this legislative power is not unbounded, and a reasonable basis for discrimination or classification must be found to exist in order to validate such legislative actions." (28 Ill. 2d 15, 18-19, 191 N.E.2d 65.) A rational basis is clearly evident for the statutory scheme challenged here, as the legislature might well feel that the public interest could best be served by an assessor endowed with continuing powers and duties of assessment, though the reviewing board periodically adjourns. We find no denial of any constitutional right.

Bulk and North Pier also assert that the back taxes were assessed without proper notice. Section 97 of the Revenue Act provides that the assessor may make omitted property assessments "* * * only on notice and an opportunity to be heard in the manner and form required by law * * *." (Ill. Rev. Stat. 1973, ch. 120, par. 578.) As the trial court noted, neither that section nor section 220 (Ill. Rev. Stat. 1973, ch. 120, par. 701) requires any particular form of notice or hearing. In the instant case, notice was sent to Bulk and North Pier's attorney; the notice set forth the parcels to be assessed, the years for the proposed back taxes, and the date and time at which a hearing would be conducted. Bulk and North Pier complain that the notice was sent to their attorney. Yet it is undisputed that they received actual notice. It is also worth noting that elsewhere in the Revenue Act (see section 116, Ill. Rev. Stat. 1973, ch. 120, par. 597, dealing with notice of increased assessments), notice to the taxpayer's agent is specifically sanctioned. Bulk and North Pier also complain that the notice was defective because it did not contain proposed assessed

values or valuation methods. As we have noted, the Revenue Act does not require that any particular details be included in the notice, and apparently these matters were raised or could have been raised at any of the several meetings between Bulk and North Pier's attorneys and the assessor's representatives. We find no error in the trial court's denial of relief on this issue.

Bulk and North Pier cite several cases in which notice was found insufficient, but the facts in those cases are a far cry from the facts at bar. In *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 373 N.E.2d 1332, there was a failure to publish a statutorily required notice. In *Exchange National Bank v. Cullerton* (1974), 20 Ill. App. 3d 370, 314 N.E.2d 271, the taxpayer was expressly denied any opportunity to be heard. And in *Marty v. Brown* (1975), 34 Ill. App. 3d 660, 338 N.E.2d 920, the court emphasized that there had not even been token compliance with a statutory notice requirement. In contrast, in the instant case Bulk and North Pier did receive notice and an opportunity to be heard, and they have failed to establish that any prejudice resulted therefrom.

. Because these are the only contentions advanced on appeal in opposition to the back taxes, and we have found them to be without merit, the judgment of the trial court upholding the back tax for the tax years 1971 and 1972 must be affirmed.

The only remaining issue is whether the 1973 assessed value of Bulk's leasehold is excessive and constructively fraudulent, such that the trial court erred in denying the valuation relief sought by Bulk. Bulk leases the Port District land under a 66-year lease dated July 1, 1960. The annual rent began at $10,000, had escalated to $25,000 by 1973, and would periodically increase to an annual rent of $75,000 for the last 30 years of the lease.

In 1960, the nine parcels of land leased by Bulk were mostly underwater. Under the lease, Bulk agreed to construct improvements for the purpose of operating a port. Bulk agreed to pay all taxes on the land and all improvements until the expiration of the lease, at which time the improvements would become the property of the Port District. Bulk subsequently did construct the contemplated port improvements, although some parcels apparently remain vacant.

The assessor fixed the 1973 assessed value of Bulk's leasehold interest at $1,204,501. At trial, Chief Deputy Assessor Swain testified that this figure was arrived at in the case of improved land, by calculating the reproductive cost of the improvements, less depreciation, and in the case of vacant land, by measuring the land and assigning a dollar value per square foot. Swain testified that upon request from a taxpayer, the assessor would make an alternative valuation of the leasehold interest according to the formula set forth in *People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 233 N.E.2d 568. If this formula, which,

briefly stated, involves determination of the present value of the current market rental payable over the unexpired term of the lease, resulted in a lower valuation, the assessor would lower the assessment accordingly.

Richard Martin, chief of the research and standards division of the assessor's office, testified on behalf of the Collector.[3] Martin stated that he computed the fair cash value of Bulk's leasehold interest by taking the present value (using an 11% discount factor) of the current market rent for similarly improved property over a hypothetical economic life of 30 years. The total assessed valuation ($1,953,875) that resulted from this method was higher than the disputed assessed valuation ($1,204,501).

On cross-examination, Martin testified that the assessment would be no different whether Bulk or the Port District owned the improvements. Martin also testified concerning a recent lease of unimproved Port District land to the First American Realty Company. At Bulk's request, Martin determined from the lease that the apparent market rent for such unimproved underwater land was .00692 cents per square foot. Applying this value to the number of acres leased by Bulk for the term of Bulk's lease and using a 10% discount figure would result in an assessed valuation of $211,994. This is lower than the assessed valuation (253,245) sought by Bulk based on the present value of the actual rent to be paid under Bulk's lease. As to the current market rental for similarly improved property, Bulk presented only the testimony of a Port District employee that there was no market and that of North Pier's president that business was bad and he thought the market rent would be less than the actual rent under the lease.

The trial court found *inter alia* that the proper way to determine the value of Bulk's leasehold was by determining the present economic equivalent of the current market rental that would be paid over the remaining term of Bulk's lease for the land as improved. The court further found that Bulk had failed to offer sufficient evidence as to the current market rental for the land as improved to rebut the presumption that the assessor's 1973 valuation was correct.

On appeal, Bulk argues that under the *American Airlines* formula, its leasehold should be valued by capitalizing the *contractual* rent to be paid for the remainder of the lease term, which, Bulk submits, results in the

---

[3] The Collector sought to introduce Martin's testimony after Swain proved unable to testify from personal knowledge that Bulk's leasehold had been analyzed in accord with the *American Airlines* formula. Martin had been allowed to remain in court upon the representation that he would not be called as a witness, and he was called over Bulk's objection. On appeal, while Bulk has not included this issue in its issues presented for review, Bulk has commented in its argument that Martin's testimony was "patently collusive" and that it was an abuse of discretion for the court to permit Martin to fill the gap in Swain's testimony. However, it is clear that Martin testified from his own knowledge; we find no basis in the record for the collusion suggested nor will we base a finding of an abuse of discretion on pure speculation.

assessed valuation of $253,245 that Bulk is requesting. In the alternative, Bulk asserts that its leasehold should be valued by capitalizing the current market rental for unimproved property, which, Bulk submits, results in the even lower assessed valuation of $211,994.

The Collector contends that both these arguments are mistaken because they fail to take into account the fact that the property is improved. The Collector argues that because Bulk failed to contradict the assessor's valuation by clear and convincing evidence that the current market rental of similarly improved property is much less, the trial court properly denied the valuation relief sought by Bulk. We agree.

■■■ Section 20(2) of the Revenue Act of 1939 provides that each taxable leasehold estate is to be valued at its fair cash value. (Ill. Rev. Stat. 1973, ch. 120, par. 501(2).) Fair cash value is synonymous with fair market value, the amount a willing lessee would pay for the right to use and occupy the premises for the unexpired term of the lease. (*People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 18, 233 N.E.2d 568.) Determination of the fair cash value of a leasehold, then, requires determination of the current market rental for the property; but because the rent is to be paid in future installments and not a lump sum, the present value of those future installments must be computed by capitalizing the current annual market rental over the unexpired term of the lease. 39 Ill. 2d 11, 18-19, 233 N.E.2d 568.

In *American Airlines*, as here, use of the current annual market rental for the land and improvements resulted in a higher valuation than the assessor's. (39 Ill. 2d 11, 20, 233 N.E.2d 568.) However, in *American Airlines*, the improvements were owned by the tax-exempt lessor and were part of the premises leased, while in the instant case, Bulk leases only the land and has constructed its own improvements. Because it does not lease the improvements, Bulk contends, the value of the improvements cannot be included in a valuation of its leasehold interest.

■■ This argument has no merit. These improvements were created and are for the benefit of Bulk as lessee, to enable it to enjoy its leasehold estate. Whether Bulk owns the improvements or leases them, the market value of Bulk's leasehold is obviously greatly enhanced by their presence. Therefore, it is the market rental for the land as improved, rather than the contractual rent or the market rental for unimproved land, that is the appropriate basis for computing the fair cash value of the leasehold. An examination of the cases cited by the court in *American Airlines* indicates that this result obtains whether the improvements are owned, as in *American Airlines*, by the lessor (see *People v. International Salt Co.* (1908), 233 Ill. 223, 84 N.E. 278; *Delta Air Lines, Inc. v. Coleman* (1963), 219 Ga. 12, 131 S.E. 2d 768), by the lessee (see *City of Chicago v. University of Chicago* (1922), 302 Ill. 455, 134 N.E. 723), or, as here, by

the lessee but under agreement that the improvements revert to the lessor on the termination of the lease. See *People ex rel. Paschen v. Hendrickson-Pontiac, Inc.* (1956), 9 Ill. 2d 250, 137 N.E.2d 381; *De Luz Homes, Inc. v. County of San Diego* (1955), 45 Cal. 2d 546, 290 P.2d 544; see also *Texas Company v. County of Los Angeles* (1959), 52 Cal. 2d 55, 338 P.2d 440; *Shaia v. City of Richmond* (1967), 207 Va. 885, 153 S.E.2d 257; Annot., 54 A.L.R.3d 402, 515-34 (1973).

We note that the assessor in the instant case based his assessment on the cost of the improvements themselves. In *People ex rel. Rosewell v. Dee El Garage, Inc.* (1977), 51 Ill. App. 3d 382, 366 N.E.2d 585, the court found that it was error for the assessor to use the value of the building on the property leased to determine the value of the leasehold, and the court remanded the cause for computation of the market rental value of the lease according to the *American Airlines* formula. The case at bar is distinguishable, however, in two respects. First, in the case at bar, the record already contains a computation according to the *American Airlines* formula, and since, as in *American Airlines,* the assessor's use of the value of the improvements results in an assessment more beneficial to the taxpayer, use of that method is permissible and remandment is unnecessary. (Compare *People ex rel. Rosewell v. Dee El Garage, Inc.* (1977), 51 Ill. App. 3d 382, 387, 366 N.E.2d 585.) Second, in the instant case, section 19.19 of the Revenue Act expressly permits Bulk to be taxed either on the value of its leasehold estate "or upon such improvements as are constructed and owned by others than the Port District," such as Bulk. (Ill. Rev. Stat. 1973, ch. 120, par. 500.19.) While it is true that Chief Deputy Assessor Swain insisted that his office used the value of the improvements, rather than the *American Airlines* formula, to value the leasehold estate, rather than the improvements themselves, Bulk is hardly in a position to complain about such niceties when it is being taxed on the lower of the two possible assessed values.

Bulk has failed to establish that the fair cash value of its leasehold interest, as determined from the current market rental of similarly improved property, is such that the original assessment is excessive. It is readily apparent, therefore, that Bulk has not sustained its burden of demonstrating by clear and convincing evidence that the original assessment is fraudulently excessive. See, *e.g., People ex rel. Korzen v. American Airlines, Inc.* (1967), 39 Ill. 2d 11, 20, 233 N.E.2d 568; *People ex rel. Frantz v. M.D.B.K.W., Inc.* (1966), 36 Ill. 2d 209, 211, 221 N.E.2d 650.

Accordingly, the judgment appealed from is in all respects affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.