(No. 14679.—Order approved.)
FREDERICK S. SMITH *et al.* Appellants, *vs.* THE BOARD OF
REVIEW OF CARROLL COUNTY, Appellee.

*Opinion filed October 21, 1922.*

1. TAXES—*property must be used exclusively for charitable purpose to be exempt.* Laws exempting property from taxation must be strictly construed, and the constitution and statutes exempting property used for a charitable purpose contemplate that only property actually and exclusively used for such purpose shall be exempt.

2. SAME—*burden is on the owner to separate exempt property from that which is taxable.* The right to enjoy exemption from taxation must be established by direct proof of all the necessary facts, and where certain portions of real estate are exempt from taxation under the statute while other portions are taxable the burden is upon the owner to show which portion of the property is exempt, and, in case of an alleged charity, if the record does not show what part of the property is used exclusively for charitable purposes and what portion is leased for cash rent the entire property is subject to taxation.

3. SAME—*principal fund is not exempt merely because income is used for charitable purpose.* Notes and bonds constituting the personal property of a testatrix are not exempt from taxation merely because the income from such property is devoted to the purpose of supporting an old ladies' home, as provided in the will.

4. SAME—*when balance in bank for charitable use is not exempt.* A large balance kept in a bank for checking purposes, to pay expenses of a charitable home established by will, is not exempt from taxation where it is not shown what sum is necessary to pay running expenses, and in any case such balance, to be exempt, should be small, within very restricted limits and for immediate use.

5. SAME—*when personal estate devoted to charitable use is not exempt.* Where the income from the personal estate of a testatrix is more than sufficient for the maintenance of a charitable home established by her will, and where it does not appear from the record what portion of the income is used solely to support the home and its inmates, it is not error to hold the personal estate taxable.

APPEAL from the order of the Board of Review of Carroll county.

O. M. GROVE, for appellants.

EDWARD J. BRUNDAGE, Attorney General, and JOHN R. CONNELL, State's Attorney, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellants filed a petition August 24, 1921, with the board of review of Carroll county for the purpose of having certain property of the estate of Caroline Mark, real and personal, declared exempt from taxation. The Tax Commission entered an order approving the finding of the board of review, and from the order of the Tax Commission the case has been brought here under paragraph 6 of section 329 of the Revenue act (2 Hurd's Stat. 1921, p. 2725,) for further review.

Caroline Mark died in 1900, seized of a large amount of real and personal property in Carroll county. By her last will and testament, which was probated in said county, she

devised a portion of her estate to trustees in trust for the founding, erection, maintenance and endowment of a home for the aged women of Carroll county and the counties adjoining who are homeless or poor, (the term "poor" being defined in the will,) to be located in or near the city of Mt. Carroll. The will directed that the trustees should select and purchase a suitable tract of land and erect the buildings thereon; that after paying for the land and buildings and furnishing and equipping the same they should invest the balance of the funds in bonds or real estate securities to constitute a fund, the income of which should be permanently applied to the expenses of carrying out the trust and to the maintaining and endowing of the home and providing for the proper wants and comforts of such persons as may become inmates thereof. The will provided for selling and disposing of any or all of the property of the estate and re-investing the proceeds upon such terms and conditions as the trustees might deem advisable, and recommended that the trustees use the greatest caution in making such sales and investing the funds.

The petition represents that one of the original trustees of said estate has since died and a successor has been appointed as provided by the will; that the trustees in the years 1906 and 1907 erected at a large cost a large and commodious two-story brick and cement fireproof building in Mt. Carroll, for the purpose of caring for the aged women provided for in the will, which is known as the Caroline Mark Home; that from the time of its completion the building has been used and maintained as a residence for homeless and poor women of the counties of Carroll, Jo Daviess, Stephenson, Ogle and Whiteside, as provided for in the will; that to provide additional space the trustees have prepared and in a measure re-built a large two-story brick dwelling owned by Caroline Mark at her death; that said two-story brick building is located upon property belonging to the estate and directly across a public highway from the

home and is known as the Annex; that since they were prepared the trustees have maintained both buildings for the purpose of caring for homeless and poor women under the provisions of the will and have employed a matron; that on April 1, 1921, and for some years theretofore, the home and annex contained as residents thirty-two homeless and poor women, all maintained therein without cost to themselves, except that some voluntarily pay for their own clothing and for medical and nurse attendance, the cost of such maintenance being paid and discharged by the trustees out of the income from the trust property; that all the women are above the age of fifty years and are homeless and poor within the meaning of the will; that the accounts of the trustees are audited semi-annually by three auditors appointed by the circuit court of Carroll county,—one each from the counties of Carroll, Jo Daviess and Stephenson,—and that the compensation to the trustees for their services is such as allowed to them by the circuit court of Carroll county from the income realized from the trust property, and that the accounts so made to said circuit court are subject to the inspection and approval of the Attorney General of the State of Illinois, acting through the State's attorney of Carroll county.

The record shows that in addition to the grounds (consisting of about 15 acres) on which the home itself stands, and which for several years past have been exempted from taxation by the taxing authorities of Carroll county, the trustees held and possessed on April 1, 1921, a piece of land known as tract A (containing about 10 acres) on which the annex is situated, and which is separated from the land on which the home is located by only a public highway; a piece known as tract B, containing about 186 acres; and a piece known as tract C, containing about 62 acres; that tract B and tract C are farm lands, and were at the time of the hearing in this case leased by the trustees to other parties for cash rentals. It would appear from the briefs and

abstract that on the hearing before the board of review testimony was taken as to the uses being made of tract A but that said evidence was not preserved in this record. We conclude from the statements made in the briefs by both parties that a portion of tract A is occupied by the building called the annex to the Caroline Mark Home and that the balance of the tract is leased to other parties for cash rent, but the amount of land so leased and the amount occupied by the annex is not definitely shown in the record. It further appears from the record that on April 1, 1921, the trustees held in trust of the funds of said estate $12,-137.17 in money deposited in bank, $30,000 in United States Liberty Loan bonds, and also other credits of the estate, consisting of interest-bearing promissory notes secured by trust deeds on real estate, and shares of stock, amounting in the aggregate to $407,264. It further appears from the record that the tract of land upon which the Caroline Mark Home itself is situated was not taxed in this proceeding by the board of review of Carroll county, neither were the Liberty Loan bonds, but that all the other property in the hands of the trustees was taxed by the board of review and was held by the board as not exempt from taxation.

It is insisted by the trustees of said estate that a part, if not all, of the property taxed by the board should be held exempt. It is argued that tract A, upon which the annex building is situated, should be held exempt, or at least the part of the land which is occupied and used solely by that building should be exempt. It seems to be conceded by counsel for appellants that a part of said tract of land is leased for cash rent, but there is no showing in the record as to just what part is so leased. It was held by this court in *First Methodist Episcopal Church* v. *City of Chicago,* 26 Ill. 482, that where a part of a building erected as a church is rented for other than religious purposes such part should be held taxable and the part of the building used exclusively for religious purposes should be exempt. (See,

also, to the same effect, *Northwestern University* v. *People,* 80 Ill. 333, and *Parker* v. *Quinn,* 23 Utah, 332.) This court has held that the constitution and laws of this State contemplate that only property actually and exclusively used for charitable purposes shall be exempt from taxation and that a law exempting property from taxation must be strictly construed; that "it devolves upon those claiming that specific property is thus exempt to clearly show that it is within the contemplation of the law." (*In re Petition of Allerton,* 296 Ill. 340. See, also, to the same effect, 1 Cooley on Taxation,—3d ed.—356, 357.) Where certain portions of real estate are used for buildings which are exempt from taxation and certain other portions are liable to taxation, the burden is upon the objector to show which property is exempt. (*City of Louisville* v. *Board of Trade,* 90 Ky. 409.) The right to enjoy exemption from taxation can only be established by direct proof of all the facts necessary to authorize the exemption. (*People* v. *Ravenswood Hospital,* 238 Ill. 137; *Monticello Seminary* v. *Board of Review,* 249 id. 481.) As the record does not show what part of tract A was exclusively used and occupied by the annex building and what part was leased for cash rent, it is therefore impossible on this record to separate the exempt property from that which is liable to taxation, and it must be held that no error was committed in holding the entire tract A subject to taxation.

It is further urged by counsel for the trustees that as the proceeds from the promissory notes and the shares of stock were all used for the support of the home, said notes and shares should be held exempt from taxation. This court has held that credits consisting of bonds and secured notes belonging to a school, the proceeds of which are used toward the support of the school, are not exempt from taxation; that the fact that the rents, revenues and income of property are devoted to school purposes does not exempt the property itself from taxation; that the property itself must be

used for school purposes before it is entitled to be held exempt. (*Monticello Seminary* v. *Board of Review, supra,* and authorities there cited.) It is clear from the record before us that the income and proceeds from the notes and bonds were devoted to the purpose of supporting the Caroline Mark Home, but that said notes and bonds, under the ruling in the *Monticello Seminary case* and the authorities there cited, were not exempt from taxation.

It is further urged by counsel for the trustees that the $12,137.17 kept in the bank by the trustees for the home should be exempt, because in managing and controlling the large estate for the support of the home it is necessary to have quite a large cash balance in the bank at all times subject to immediate use and for the ordinary daily expenses of the home, and that the fund in the bank April 1, 1921, was not too large for the purpose of paying the running expenses of said home and should be held exempt. No proof is found in the record showing what sum, if any, was necessary to be kept on hand to be checked out in order to properly conduct a home of this kind. Without considering or deciding here whether any amount kept on hand in the bank for checking purposes for immediate use in paying the running expenses would be exempt from taxation, it may be said in passing that it would seem that such an amount, if any, should be small and within very restricted limits. This court said in *In re Petition of Allerton, supra,* on page 345, that "a trust fund possessed and held by trustees, or real estate held for charitable purposes, not then actually and exclusively used for charitable purposes but only possessed and held for such use in the future, is not exempt from taxation under the provisions of the statute." In our judgment, under the reasoning of this court in that opinion it must be held that the $12,137.17 kept in the bank for checking purposes was not exempt from taxation.

It appears from the briefs and record that the trustees were paid in fees for the care and management of the estate

for the year ending June 1, 1921, the sum of $3153, and it is argued by their counsel that this sum, under the provisions of the will authorizing the payment of reasonable fees to the trustees for the care of the estate, should be held by this court as properly expended and in no way militating against the trust estate being exempt from taxation; while counsel for the State argue that this sum of $3153 paid to the trustees for care and management amounts to practically ten per cent of the annual income of the estate, and that it does not appear in the record what portion of the income is used solely to support the aged women living in the home. We do not find from the briefs that this exact question, or any similar one, has been decided by the courts of this State, and counsel for the trustees states in his briefs that so far as he is able to ascertain the point at issue herein has never been decided by any court in this country or in Great Britain.   In England from very early times charitable trusts were created, and corporations, as well as individuals, acted as trustees therefor.   Under the common law no trustee was entitled to any salary or compensation for his personal trouble or loss of time except under an express or implied direction in the instrument creating the trust; (*Ellison* v. *Airey,* [1748] 1 Ves. Sr. 111; *Webb* v. *Shaftesbury,* [1802] 7 id. 480;)  and this rule of the common law has been approved by this court. (*Arnold* v. *Alden,* 173 Ill. 229.)   In 1891 the Illinois legislature enacted a statute relating to compensation of trustees, which provided that "where a trustee or trustees shall hereafter act under any power or appointment given or created by any will, testament or codicil, * * * a reasonable compensation may be charged and allowed" for such services. (*Arnold* v. *Alden, supra.*)   Such statute is still in force in this State. (1 Hurd's Stat. 1921, chap. 3, sec. 136, p. 35.)   In view of the fact that it does not appear from the record what portion of the income paid to the trustees was used solely for their services in caring for the aged women residing in

the home, we think, under the authorities already cited, that the entire amount of the fees paid to the trustees of the home in managing the estate cannot be held exempt from taxation or as authorized to be paid from exempt property.

We find no error, on the showing in this record, as to the taxation of any of the property of the home, and the decision of the board of review of Carroll county, as approved by the order of the Tax Commission, will be approved.

*Order approved.*