(No. 33401.—

THE CITY OF LAWRENCEVILLE, Appellant, *vs.* KENNETH MAXWELL, County Treasurer, *et al.,* Appellees.

*Opinion filed April 19, 1955—Rehearing denied June 10, 1955.*

GOSNELL & FITZPATRICK, of Lawrenceville, (MAURICE E. GOSNELL, of counsel,) for appellant.

ROSCOE D. CUNNINGHAM, State's Attorney, of Lawrenceville, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The plaintiff-appellant, the city of Lawrenceville, filed its complaint in the circuit court of Lawrence County to enjoin the county treasurer and *ex-officio* tax collector, the county clerk, and the State's Attorney, all of Lawrence

County, from collecting and attempting to collect, in any manner, certain district drainage assessments and the general taxes for the years 1951 and 1952 levied against 3,060 acres of land owned by plaintiff-appellant, charging that the property is exempt from taxation, being located beyond the corporate limits of the city and used exclusively for a municipal purpose, namely a municipal airport, and further charging that assessment, levy and extension of said general taxes was not made in accordance with the applicable statute in that proper notice of such action was not given to plaintiff-appellant.

The defendant-appellee's answer was a general denial of plaintiff-appellant's allegations and alleged as an affirmative defense that drainage taxes were extended, levied and collected against a portion of said lands. The reply of plaintiff-appellant was a general denial. Upon a hearing of the issues joined, the trial court found that during the calendar years 1951 and 1952 and for several years prior thereto, 860 acres of said lands were wholly or partially used for a tax-exempt municipal purpose, to wit, a municipal airport; that 2200 acres of said lands were in the calendar years 1951 and 1952, used by plaintiff-appellant for nontax-exempt agricultural purposes; that general taxes were legally assessed, levied and extended for the year 1951, payable in 1952 and for the year 1952 payable in 1953; that since acquisition of title to said lands by plaintiff-appellant in 1948 and for several years prior thereto, annual drainage benefits were assessed, levied and extended against various parcels of land lying within the boundaries of drainage districts established and operative in that geographical area and that plaintiff-appellant paid no portion of such drainage tax so assessed, levied and extended against such lands except as regards a certain 76-acre tract which plaintiff-appellant redeemed from a delinquent tax sale made in 1951 for failure to pay drainage tax due thereon.

A decree was entered providing that the drainage district assessments for the years 1949, 1950, 1951, and 1952 payable in 1950, 1951, 1952, and 1953, respectively, should be paid in full; that unpaid drainage district assessments, as assessed, levied and extended against the said land for prior years should be abated; that general real-estate taxes, excluding drainage districts assessments, as assessed, levied and extended against the said lands for the years 1951 and 1952, payable in 1952 and 1953, respectively, should be prorated at the ratio that the taxable acreage, being 2200 acres, bears to the total acreage, being 3060 acres.

Plaintiff-appellant in its Statement of Errors sets forth the trial court erroneously ordered drainage district assessments as levied and extended against various parcels of said lands for the years 1949, 1950, 1951, and 1952 paid in full. However, plaintiff-appellant makes no mention of the drainage ditch assessments in its Statement of Case, Points and Authorities and Arguments nor in its Reply Brief and Reply to Argument. By failing to argue its assignment of error in this regard, it has been waived. *Megginson* v. *Megginson,* 367 Ill. 168, 10 N.E. 2d 815.

The record is voluminous. In the view we take it will not be necessary to relate all the facts in detail. It is sufficient to state that in 1942 the United States Government acquired the lands in question and thereafter constructed, maintained and operated an air training school, called "George Field," thereon until 1946. After the land ceased to be used as an air training station, the entire 3060 acres was made available by the United States Government, through War Assets Administration, to the city of Lawrenceville as a municipal airport. On November 10, 1948, the city of Lawrenceville acquired title to the land, renamed the installation Lawrenceville Municipal Airport, went into possession and has remained in possession.

At the time the United States Government acquired title to said lands the board of review of Lawrence County

removed the lands from the township collector's tax-warrant book. During the period of ownership by the United States Government no general real-estate taxes were assessed, levied or extended against said lands but at various times drainage district taxes were extended, levied and collected against a portion of said lands.

From the evidence it appears that at the time the city of Lawrenceville took over the operations of George Field, the War Assets Administrator and the Civil Aeronautics Authority had in effect certain leases for agricultural purposes. The acreage under cultivation included in the agricultural leases was 1719 acres. The city of Lawrenceville engaged the services of a farm manager. After his employment additional acreage was from time to time put into cultivation. In 1953 approximately 2500 acres of the 3060 acres were under cultivation with approximately 800 being planted in short crops near and between the runway areas. The rents and income from the farming activities were expended for the operation and maintenance of the airport.

The superintendent of the Lawrenceville Municipal Airport testified to the length of the runways and their directions, taxiways, parking apron, radio equipment for weather information, service facilities, restaurant, fire and police protection, flood lighting, etc. His testimony indicates that one flying service at Lawrenceville Municipal Airport owns and operates eight planes for commercial purposes. In addition 10 or 12 private planes are stored at and fly from the field. It further appears that the city of Lawrenceville has not been selected as a scheduled stop for any airline.

Seeking a reversal of the decree, plaintiff-appellant contends its entire tract of 3060 acres is used exclusively for a municipal or public purpose, and, hence, exempt from taxation.

Section 3 of article IX of the 1870 constitution of the State of Illinois, declares "The property of the State,

counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law." Under this provision of the constitution the legislature incorporated in the Revenue Act of 1939 a section under which certain property is exempt from taxation. That section provides in part: "All property described in this section to the extent herein limited, shall be exempt from taxation, that is to say: * * * (6) * * *; and all property owned by any city or village outside of the corporate limits of the same if used exclusively for municipal or public purposes, * * *" Ill. Rev. Stat. 1953, chap. 120, par. 500.

Under the plain language here employed the lands involved in this suit are liable to taxation unless used exclusively for municipal or public purposes. The constitution of the State of Illinois as set forth in section 3 of article IX, authorizing exemption of municipal property from taxation, and the statutes implementing it are to be strictly construed, and unless property clearly falls within a class which may be exempt, it is subject to taxation. (*People ex rel. Lawless* v. *City of Quincy,* 395 Ill. 190.) Statutes passed for the purpose of exempting property from taxation must, in view of section 3 of article IX of our constitution, be strictly construed. (*Glen Oak Cemetery Co.* v. *Board of Appeals,* 358 Ill. 48; *People ex rel. Lloyd* v. *University of Illinois,* 357 Ill. 369.) In determining whether property is included within the scope of tax exemption, all debatable questions will be resolved in favor of taxation. (*People ex rel. Lloyd* v. *University of Illinois,* 357 Ill. 369; *Turnverein "Lincoln"* v. *Board of Appeals,* 358 Ill. 135; *People ex rel. Olmsted* v. *University of Illinois,* 328 Ill. 377; *People ex rel. Cannon* v. *Southern Illinois Hospital Corp.* 404 Ill. 66.) Tax exemption stat-

utes must be strictly construed and all doubts resolved against an exemption. *People ex rel. Marsters* v. *Rev. Saletyni Missionaries*, 409 Ill. 370.

Whether property is exempt from taxation depends upon the facts in each case. (*City of Mattoon* v. *Graham*, 386 Ill. 180; *People ex rel. Carr* v. *Alpha Pi of Phi Kappa Sigma*, 326 Ill. 573; *People ex rel. Harding* v. *Omega Chapter of Psi Upsilon Fraternity*, 335 Ill. 317.) The primary use to which property is put is the test whether it is exempt from taxation. (*People* v. *Omega Chapter of Psi Upsilon Fraternity*, 335 Ill. 317; *School of Domestic Arts and Science* v. *Carr*, 322 Ill. 562; *People ex rel. Fix* v. *Trustees of Northwestern College*, 322 Ill. 120.) Property is not exempt from taxation merely because the income from it is used for an exempt purpose where the property itself is not so employed. (*People ex rel. Goodman* v. *University of Illinois Foundation*, 388 Ill. 363.) The use to which the property is devoted rather than the use to which income derived from the property is employed is decisive. (*People* v. *University of Illinois Foundation*, 388 Ill. 363.) The primary use to which property owned by a municipal corporation outside its corporate limits is devoted, and not its secondary or incidental use, is controlling in determining whether it is used exclusively for "municipal purposes" so as to exempt it from taxation. *City of Mattoon* v. *Graham*, 386 Ill. 180.

Whether property is exempt from taxation depends upon facts which must be ascertained by jury or tribunal acting as such; and when such facts are determined the question of exemption is one of law. (*In the Matter of Swigert*, 119 Ill. 83.) One claiming exemption from taxation has the burden to show clearly that the property is within the exemption statute. (*Turnverein "Lincoln"* v. *Board of Appeals*, 358 Ill. 135; *Glen Oak Cemetery* v. *Board of Appeals*, 358 Ill. 48; *People ex rel. Lloyd* v. *Uni-*

*versity of Illinois,* 357 Ill. 369.) One who claims exemption of his property from general taxation has the duty to clearly establish claimed exemption. *People ex rel. Gill* v. *Trustees of Schools,* 364 Ill. 131.

Plaintiff-appellant has the burden of proving by competent evidence that the property in question is used exclusively for municipal or public purposes. It is plaintiff-appellant's duty as property owner to clearly establish that its property falls within the exempted class. There is nothing in the record before us to justify plaintiff-appellant's assertion that planes approaching the runways must utilize all or a large portion of the 3060 acres. Plaintiff-appellant directs attention to the fact that Lawrenceville Municipal Airport could not be operated without the income from the farming operations conducted upon the acreage. The use to which the property is devoted is decisive rather than the use to which income derived from the property is employed. The distinction between investment and direct use for an exempt purpose has been well stated in *Wehrle Foundation* v. *Evatt,* 141 Ohio St. 467, where the court held that property which is used to produce income to be used exclusively for charitable purposes may not be exempted from taxation, the test being, instead, the present use of the property rather than the ultimate use of the proceeds derived from the property. To the same effect are *People ex rel. Goodman* v. *University of Illinois Foundation,* 388 Ill. 363, and *People ex rel. Hesterman* v. *North Central College,* 336 Ill. 263. In our opinion the evidence clearly supports the trial court finding of the acreage utilized for airport operations and acreage devoted to farming. Where property is used for two purposes, one of which is exempt from taxation and one of which is not, a tax should be assessed against that part which is devoted to a use not exempt from taxation. There is sufficient evidence to establish that the property devoted to

farming and held taxable was not used exclusively or primarily for municipal or public purposes. The claim of exemption was properly denied by the trial court.

Plaintiff-appellant urges that the board of review of Lawrence County was without jurisdiction to place the George Field lands on the assessment rolls for failure to give a notice of intention to so do. However, from the evidence it appears that on July 11, 1951, the board of review met with the township assessor. Thereafter, the board prepared a Statement of Assessment of Real Estate, dated July 12, 1951, addressed to the city of Lawrenceville, Wallace Stivers, Mayor, Lawrenceville, Illinois, setting forth the city of Lawrenceville as owner of the lands in question, giving the description, section, township, range, and acres, and listing the assessed valuation and total value calculated at $75 per acre. The following notation was set forth on the said Statement of Assessment of Real Estate, dated July 12, 1951:

"Note: Land commonly known as George Field has been placed on the assessment roll in Allison Township. Check description and valuation carefully, if not correct notify the Board of Review on or before July 23, 1951.
E. H. McKelfresh, Chairman."

Defendant-appellees argue that the said Statement of Assessment of Real Estate, dated July 12, 1951, was mailed; the plaintiff-appellant contends the said Statement of Assessment of Real Estate was not received. The clerk of the board of review testified that she mailed this notice properly addressed, with postage affixed, and it was never returned to the board's office. The chairman of the board testified the notice was mailed and never returned. The mayor and city clerk denied receiving that or any other notice. The mayor admitted that he and a member of the board met in the summer or fall of 1951 and discussed placing the George Field lands on the tax rolls. We think the trial court who heard all the testimony was justified in finding there had been service of the Statement of As-

sessment of Real Estate, dated July 12, 1951, on plaintiff-appellant.

The authorities are uniform that there must be notice to the property owner, either actual or by the law, and an opportunity for hearing of some description, as a condition precedent to charging him with a tax. On the question of a constitutional right to notice and a hearing, Judge Cooley says: "We should say that notice of proceedings in such cases and an opportunity for a hearing of some description were matters of constitutional right. It has been customary to provide for them as a part of what is 'due process of law' for these cases; and it is not assumed that constitutional provisions, carefully framed for the protection of property, were intended or could be construed to sanction legislation under which officers might secretly assess one for any amount, in their discretion, without giving him an opportunity to contest the justness of the assessment. It has often been very pointedly and emphatically declared that it is contrary to the first principles of justice that one should be condemned unheard; and it has also been justly observed of taxing officers, that it would be a dangerous precedent to hold that any absolute power resides in them to tax as they may choose, without the giving of any notice to the owner; * * *. It is not customary to provide the taxpayer shall be heard before the assessment is made, but a hearing given afterwards, either before the assessors themselves or before some court or board of review. And of the meeting of that court or board of review the taxpayer must in some manner be informed, either by personal notice or by some general notice which is reasonably certain to reach him or which is equivalent, by some general law which fixes the time and place of meeting and of which he was take notice. The last is a common method of enabling him to be heard." (Cooley on Taxation, 266.) Where a tax assumes the form of a license fee or a fixed sum, a hearing as to value is, of course, useless; but if

the tax is levied upon property according to its value, the board of review acts judicially and it is essential to the security of a person that he should have a hearing on that question. Here the board of review of Lawrence County gave notice to plaintiff-appellant of its intention to assess the lands of George Field, and gave the city time to appear. The trial court found that "due and proper statutory notice" had been given. We do not find in the record sufficient cause to reverse that finding.

The decree of the circuit court of Lawrence County is affirmed.

*Decree affirmed.*