FOREST PRESERVE DISTRICT OF Du\PAGE COUNTY, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees (Waste Management of Illinois, Defendant-Appellant).

Second District   No. 2—93—0881

Opinion filed September 15, 1994.—Rehearing denied October 14, 1994.

Paul M. Mitchell, of Nadelhoffer, Campbell, Kuhn, Mitchell, Moss & Saloga, P.C., of Naperville, for appellant Forest Preserve District of Du Page County.

Thomas J. McNulty and Patrick J. McNerney, both of Keck, Mahin & Cate, of Chicago, for appellant Waste Management of Illinois.

James E. Ryan, State's Attorney, of Wheaton (Robert G. Rybica, Assistant State's Attorney, of counsel), for appellee Board of Review of Du Page County.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Peter G. Goldsmith and Jerald S. Post, Assistant Attorneys General, of counsel), for appellee Department of Revenue.

Richard J. Tarulis, of James, Brooks, Adams & Tarulis, of Naperville, for other appellees.

JUSTICE DOYLE delivered the opinion of the court:

■ This case raises the principal question of whether a certain

parcel of land, which is located within the Greene Valley Forest Preserve, is exempt from taxation as property being used for a public purpose under either section 19.6 or section 19.9 of the Revenue Act of 1939 (35 ILCS 205/19.6, 19.9 (West 1992)). Section 19.6 exempts from taxation "all property owned by a county, village, taxing district, or city that is being held for future expansion or development, except property that has been leased or may be leased by a county, village, taxing district, or city to lessees for use for other than public purposes." (35 ILCS 205/19.6 (West 1992).) Section 19.9 generally exempts "other public grounds owned by a municipal corporation and used exclusively for public purposes." 35 ILCS 205/19.9 (West 1992).

In 1990, the Du Page County board of review determined that the tax-exempt status of the subject property, which was being operated as a sanitary landfill within a larger area known as the Greene Valley Forest Preserve, remained unchanged for the 1989 tax year. The Department of Revenue (Department), however, subsequently denied the District's application for property tax exemption on the subject property.

Following the Department's denial, the Forest Preserve District of Du Page (District) applied for a formal hearing before the Department, contending that the property was being used for a tax-exempt purpose and should continue to be exempt. A formal hearing before a Department administrative law judge (ALJ) was held, and the Department ultimately approved the ALJ's determination that the subject property was not tax exempt because its primary use was the operation of a landfill for profit by Waste Management of Illinois, Inc. Prior to 1989, the subject property had been exempt from taxation.

The District then filed a complaint for administrative review in the circuit court of Du Page County against the Department, the board of review of Du Page County, C. Gordon Shultes, Lisle Township assessor, Lisle Township, Naperville Community School District 203, and Waste Management of Illinois, Inc. (WMI). District 203 and Lisle Township counterclaimed against the supervisor of assessments of Du Page County, the Du Page County board of review, the Du Page County clerk, and the Du Page County treasurer. The trial court dismissed the counterclaim, and, following further hearing, it dismissed the District's complaint and affirmed the Department's denial of the District's application. The District timely appeals, and WMI, although originally postured as a defendant, joins, as an appellant, in the District's appeal.

The principal issue germane to both the District and WMI's posi-

tion on appeal is whether the trial court erred in affirming the Department's determination that the subject property was not being used for a public purpose. WMI contends further that even if it were determined that the property was not used for a public purpose the operating agreement entered into between the District and WMI was merely a license and not a lease. Additionally, WMI contends that this appeal is moot because the 1989 tax assessment for the subject property was zero.

The following relevant facts are undisputed. The subject property is an approximately 16.8-acre parcel located within the 210-acre Greene Valley Forest Preserve. Since 1974 the property has been operated as a sanitary landfill under an agreement between the District, as owner of the property, and WMI.

The agreement recites that the District "desires the partial development of the Greene Valley Forest Preserve for scenic and recreational hill development through modification of the ground form using the techniques of sanitary landfill." The District expressly granted WMI the exclusive right and privilege to have ingress and egress to the subject property.

Additionally, WMI retained overall management of the landfill, and its operation was to be put in a separate division and cost center of WMI with an individual set of books. WMI's operating personnel were further required to conform to certain requirements as set forth by the District.

The agreement further provided that the District would receive compensation. WMI was obligated to pay to the District 10% of the amount charged by WMI for all waste material received and deposited during the first 10 years of the contract. For each additional two-year period, an additional 1% was to be added "to the preceding period's royalty." Additionally, the District would receive 25% of the amount received for the sale of material recovered from the waste stream.

Also contained in the record on appeal was a 1988 year-end statement of revenue and royalties for the Greene Valley landfill. For the year ending 1988, a "net revenue for royalty calculation" of $10,533,039.57 was shown. The District was paid $1,331,715.35 in royalty payments and the "landfill expense fund" showed $1,871,475.80 in remittances to the District. Additionally, $629,149.44 in county solid waste disposal fees were remitted to the District.

We initially note that the parties differ to some extent as to the appropriate standard of review to be applied. Because the facts in the present case are undisputed, a determination of whether the subject property is exempt from taxation is a question of law. (See *City of*

*Chicago v. Illinois Department of Revenue* (1992), 147 Ill. 2d 484, 491; *Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331.) Therefore, the decision regarding the tax-exempt status of the property " 'depends solely upon an application of the appropriate legal standard to the undisputed facts.' " *City of Chicago*, 147 Ill. 2d at 491, quoting *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 129; *Girl Scouts of Du Page County Council, Inc. v. Department of Revenue* (1989), 189 Ill. App. 3d 858, 861.

We further note that the legislature in December 1989 amended the Revenue Act of 1939 to expressly exempt from taxation "[a]ll property of every kind belonging to any forest preserve district." See 35 ILCS 205/19.18c (West 1992).

Turning to the merits, WMI contends first that the construction of the Greene Valley Recreational Preserve by "modification of the ground form through the sanitary landfill technique" necessarily compels the conclusion that the subject property was being used for a public purpose. WMI argues that when sections 18.1 and 18.6a of the Downstate Forest Preserve District Act (70 ILCS 805/18.1, 18.6a (West 1992)) are read *in pari materia*, it demonstrates that the use of the property was consistent with the legislative grant of power to serve the public. Therefore, according to WMI, the use of the property was for a public purpose because it was consistent with the legislative edict governing forest preserve districts. In our opinion, WMI's argument merely begs the pivotal question on review, which is whether the primary use of the property for the 1989 tax year was for a public purpose.

■ While the operation of a sanitary landfill on forest preserve property in 1989 was an arguably legal use, and the power of the District to construct recreational and cultural facilities on its property is unquestioned (see 70 ILCS 805/18.1 (West 1992)), the mere fact that WMI has shown an independent statutory basis for the construction of recreational facilities and the establishment of a landfill expense fund does not address the fundamental inquiry necessary to determining the tax-exempt status of the property. It is the primary use of the property which determines its tax-exempt status (*City of Lawrenceville v. Maxwell* (1955), 6 Ill. 2d 42, 48), and the right to exemption can only be established by direct proof of all the facts necessary to authorize exemption (*Smith v. Board of Review* (1922), 305 Ill. 38, 43).

Differing from WMI's position somewhat, the District maintains that the operation of a sanitary landfill is a use for an exclusively public purpose under section 19.9 of the Revenue Act of 1939. (See 35

ILCS 205/19.9 (West 1992).) The District correctly maintains that exclusive public use has been consistently held to mean that the primary, and not incidental, use of the property determines the property's tax-exempt status. (See, *e.g., Lawrenceville,* 6 Ill. 2d at 48.) It argues, however, that the operation of the subject property as a sanitary landfill was a proper public and forest preserve purpose. The District argues further that it did not intend to earn a profit but rather to construct a recreational facility and operate a landfill. Under the District's view, any income derived from the operation of the landfill was merely incidental to its use as a tax-exempt property, and, therefore, the tax-exempt status of the property should not be disturbed.

In support of its position that any income from the operation of the property was incidental, the District relies on cases which have considered the primary and incidental uses of property in the context of charitable (see *People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363; *Evangelical Hospitals Corp. v. Department of Revenue* (1991), 223 Ill. App. 3d 225) and religious purposes (*Childrens Development Center Inc. v. Olson* (1972), 52 Ill. 2d 332). In *Goodman,* it was contended that four university buildings used for a student union, dormitories, the school newspaper, administrative and departmental offices, and a restaurant and barbershop operated under leases to private individuals were not tax exempt because fees were collected for the various services performed. The court held that the buildings were exempt because they were not leased or otherwise used with a view to profit and that any income derived from the property was used to promote a public educational purpose. *Goodman,* 388 Ill. at 374-75.

In *Evangelical,* this court held, in part, that a substantial portion of an office building occupied by a for-profit subsidiary of a non-profit corporation, which, in part, provided management services to the non-profit parent, was tax exempt. (*Evangelical,* 223 Ill. App. 3d at 231.) We further held, however, that the remaining office space, which included a pharmacy, the for-profit corporate staff office, and real estate management offices, was not exempt from taxation. *Evangelical,* 223 Ill. App. 3d at 231.

*Goodman* and *Evangelical* are readily distinguishable from the present case. Not only did those cases construe different sections of the Revenue Code, which expressly excluded from exemption uses "with a view to profit," but the incidental use shared a much closer nexus to the tax-exempt purpose. Accordingly, we are unpersuaded by the District's reliance on those cases.

In the final case cited by the District, *Childrens Development*

*Center*, the court held that the mere leasing of a portion of tax-exempt property to another, whose primary use was also tax exempt, did not destroy the tax-exempt status of the property even though income was generated from leasing the property. The court determined that it was the primary use to which the property was devoted after the leasing which determined whether the tax-exempt status continued. (*Childrens Development Center*, 52 Ill. 2d at 336.) This case is distinguishable from the present case on several grounds: (1) it involved a different section of the statute; (2) the dispositive issue before the court was different; and (3) it was undisputed that the lessee used the property for a tax-exempt purpose, which unlike the case here remains very much in dispute.

■ Having disposed of the authority relied on by the District nevertheless leaves us with the pivotal question of whether the primary use of the subject property was for a tax-exempt purpose. It is well established that statutes granting tax exemptions on property must be strictly construed in favor of taxation (*Christian Action Ministry v. Department of Local Governmental Affairs* (1978), 74 Ill. 2d 51, 62) and the party claiming an exemption has the burden to prove clearly and conclusively that it is entitled to exemption (*Telco Leasing, Inc. v. Allphin* (1976), 63 Ill. 2d 305, 310). Moreover, courts have no power to create exemption from taxation by judicial construction (*People ex rel. Cannon v. Southern Illinois Hospital Corp.* (1949), 404 Ill. 66, 68), and each individual claim must be determined from the facts presented (*Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 394). All facts are to be construed and all debatable questions resolved in favor of taxation. *City of Chicago*, 147 Ill. 2d at 491-92.

■ Construing all the facts and debatable questions in favor of taxation, we conclude on the record before us that the District failed to prove clearly and conclusively that the property was being used for a public purpose during the tax year in question, thus exempting it from taxation. It was undisputed that the subject property had been operated as a sanitary landfill for 15 years and that it continued in such use during the 1989 tax year. Furthermore, no serious challenge was made regarding WMI's status as a for-profit business whose primary purpose, at the subject property, was the operation of a sanitary landfill. The mere fact that the agreement between WMI and the District recites that the construction of a recreational area is its primary purpose does not compel a different conclusion. A fair reading of the entire document leads inexorably to the conclusion that the primary use of the property was to operate a sanitary landfill with the intended result of generating substantial revenues from the operation thereof. The agreement expressly provided for compensa-

tion to the District and the payment of royalties. The ultimate restoration of the landfill area to a recreational use, in our opinion, was merely an incidental or intended use and not the primary use for the tax year in question. Accordingly, because it is the primary use, and not the incidental or intended use, which determines the tax-exemption status (*Lawrenceville*, 6 Ill. 2d at 48), we conclude, on the record before this court, that for the 1989 tax year the actual primary use of the subject property was for a nonpublic purpose.

Furthermore, the fact that income from the operation of the landfill might be applied to a tax-exempt purpose does not otherwise transform a taxable use into a tax-exempt one. "The use to which the property is devoted is decisive rather than the use to which income derived from the property is employed." *Lawrenceville*, 6 Ill. 2d at 49.

WMI maintains further, however, that once construction of the recreational facility through "the sanitary landfill technique" had begun, the subject property became exempt. The underlying import of WMI's argument is that the operation of a sanitary landfill for 14 years prior to the tax year in question was merely the construction period preceding the completion of a recreational hill. In support of its contention, WMI relies solely on *Weslin Properties, Inc. v. Department of Revenue* (1987), 157 Ill. App. 3d 580, which held that lands necessary for the construction of an emergency care center, necessary roads, and parking facilities qualified under a statute governing charities. (*Weslin*, 157 Ill. App. 3d at 586.) In *Weslin*, the property in question had not been put into a charitable use during the tax year in question. Instead, the property was in the planning and construction phase. The court nevertheless concluded that the subject property was tax exempt because development and adaptation for an exempt purpose had been initiated. The court stated further that development and adaptation beyond mere intention to convert were necessary for the property to gain tax-exempt status. (*Weslin*, 157 Ill. App. 3d at 585-87.) *Weslin* does not compel a different result in the present case.

Although the agreement between WMI and the District contemplated that the activities on the subject property would ultimately result in the construction of a recreational area, we read the agreement as merely stating an intention to convert the property to such use following its usefulness as a sanitary landfill. Furthermore, there was no evidence in the record to support the conclusion that construction and *adaptation* into a recreational area was the primary use of the property. On the contrary, the record suggests that the property continued to operate as a sanitary landfill during the 1989 tax year. Accordingly, because the property continued to operate

as a sanitary landfill during the 1989 tax year, and neither WMI nor the District presented clear and specific evidence demonstrating such operation was a tax-exempt use, we determine that the subject property was not exempt from taxation for the 1989 tax year.

■ WMI contends, however, that even if it were determined that the actual use was a nonpublic use, its agreement with the District was not a taxable lease but merely a license. WMI argues (1) that neither it nor the District intended a conveyance of the subject property; (2) that the operating agreement between WMI and itself merely entitled WMI to operate the landfill subject to the management and control of the District; and (3) that WMI did not have exclusive control of the property because it acted only with the consent of the District. Although raising a similar argument in the alternative, the District initially concedes that it does not view the question of whether the agreement was a lease or license as being dispositive. The District states that the primary use of the property necessarily determines its tax-exempt status. We agree. Even if it were assumed that the agreement between WMI and the District granted only a license to WMI to operate the subject property for the benefit of the District, the question would still remain as to whether the property's primary use was tax exempt. Accordingly, we find WMI's contention unavailing.

■ Additionally, WMI maintains that section 19.18c of the Revenue Act of 1939 exempted the subject property from taxation during the 1989 tax year. Effective December 5, 1989, section 19.18c exempts from taxation "[a]ll property of every kind belonging to any forest preserve district." (35 ILCS 205/19.18c (West 1992).) WMI argues that because the statute was enacted during the tax year in question, the legislature intended to grant tax-exempt status to the District for the 1989 tax year. We disagree. The tax liability of the District accrued on January 1, 1989. (See 35 ILCS 205/27a (West 1992).) The status of the property for taxation and the liability to taxation was fixed on that date, and property subject to taxation on assessment day in any year is liable for the taxes for that year even though it may subsequently, during that year, become exempt from taxation. (*People ex rel. Kassabaum v. Hopkins* (1985), 106 Ill. 2d 473, 476-77.) Accordingly, section 19.18c did not exempt the District from taxation during the year in question.

■ WMI also argues that the trial court erred in not dismissing the appeal as moot because the board of review certified the assessment for the property as zero for the 1989 tax year. WMI argues that the Lisle Township assessor's failure to file an action seeking administrative review within 35 days of the Property Tax Appeal

Board's dismissal of the assessor's appeal from the board of review's granting the exemption rendered the case moot. It is unnecessary to reach this contention because WMI relies on documents which, although included in the appendix section of its brief, were not made a part of the record, as best we can discern, before the Department, the circuit court, or this court. Accordingly, we refuse to consider those documents and strike them from WMI's brief. See *In re Estate of Marks* (1992), 231 Ill. App. 3d 313, 320.

Because we have determined that neither WMI nor the District has demonstrated a public use of the property during the 1989 tax year, it is unnecessary to inquire whether a forest preserve district qualifies as one of the entities entitled to tax-exempt status under either section 19.6, which on its face exempts counties, villages, taxing districts, or cities (35 ILCS 205/19.6 (West 1992)), or section 19.9, which on its face exempts certain property owned by municipal corporations (35 ILCS 205/19.9 (West 1992)).

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS, P.J., and WOODWARD, J., concur.