# Illinois Official Reports

## Appellate Court

---

*Invenergy Nelson LLC v. Rock Falls Township High School District No. 301*,
2020 IL App (2d) 190374

---

| | |
|---|---|
| Appellate Court Caption | INVENERGY NELSON LLC, Plaintiff-Appellant, v. ROCK FALLS TOWNSHIP HIGH SCHOOL DISTRICT NO. 301, EAST COLOMA-NELSON SCHOOL DISTRICT NO. 20, and THE LEE COUNTY COLLECTOR, Defendants (Rock Falls Township High School District No. 301, Defendant-Appellee). |
| District & No. | Second District<br>No. 2-19-0374 |
| Filed | May 12, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Lee County, No. 17-TX-46; the Hon. Charles T. Beckman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Emily L. Peel and Jeffrey A. Merar, of Thompson Coburn LLP, of Chicago, for appellant.<br><br>Steven M. Richart, Babak Bakhtiari, and Katherine A. LaRosa, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for appellee. |

Panel          JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Jorgensen concurred in the judgment and opinion.

## OPINION

¶ 1      On November 9, 2017, the plaintiff, Invenergy Nelson LLC (Invenergy), filed a two-count complaint, raising a tax objection and requesting declaratory relief, against the defendants, Rock Falls Township High School District No. 301, East Coloma-Nelson School District No. 20, and the Lee County Collector. On February 1, 2018, the Board of Education of Rock Falls Township High School District No. 301 (Board) filed a motion to dismiss Invenergy's complaint, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). The trial court ultimately dismissed both counts of Invenergy's complaint. Invenergy appeals from these orders. We affirm.

¶ 2                               I. BACKGROUND

¶ 3      On July 19, 2000, the Board signed a document titled "Resolution Granting Real Estate Tax Abatement To LSP-Nelson Energy, LLC" (2000 Resolution). In the 2000 Resolution, the Board agreed to abate property taxes on 62 acres of property in Lee County, then owned by LSP-Nelson Energy, pursuant to section 18-165 of the Property Tax Code (Tax Code) (35 ILCS 200/18-165 (West 1998)). The 2000 Resolution allowed the Board to abate a portion of its taxes to induce commercial development of the property. (The record indicates that this particular abatement was for the installation of a power-generation facility.) The Board determined that, in 1999, the equalized assessed value of the property was $14,400 and the taxes levied for the school district were $409.94. The resolution further stated that the tax abatement would apply to only new physical improvements on the property and would last for five consecutive years, beginning with the first full year of the facility's commercial operation. Each year the percentage of taxes abated decreased, from 90% in the first year to 10% in the last year. The total abatement could not exceed $4 million. The 2000 Resolution also stated that the Board would take all further action necessary to abate taxes as stated within the resolution. A certified copy of the 2000 Resolution was filed with the county clerk of Lee County.

¶ 4      LSP-Nelson Energy filed for bankruptcy in 2003 and never completed the power generation facility. In 2004, Invenergy purchased the property from LSP-Nelson Energy's bankruptcy estate. Invenergy thereafter developed a power generation facility on the property, and 2016 was its first full year of operation.

¶ 5      In April 2017, Invenergy approached the Board to acquire the property tax abatement provided by the 2000 Resolution. On April 26, 2017, the Board adopted another resolution (2017 Resolution), directing the Lee County Collector not to apply the property tax abatement. In the 2017 Resolution, the Board stated that the tax abatement had expired by its own terms and was "superseded by Board policy 4.12, adopted in 2007 [(the 2007 policy)] under which the Board has received no application for the property in question." The Board acknowledged that the property had been sold to Invenergy but noted that Invenergy had never submitted any requests to the Board for a tax abatement resolution.

¶ 6     On November 9, 2017, Invenergy filed a verified complaint for tax objection against Rock Falls Township High School District No. 301, East Coloma-Nelson School District No. 20,[1] and the Lee County Collector. In its complaint, Invenergy alleged that the tax abatement provided by the 2000 Resolution enticed it to purchase the property and spend millions to construct a fully operational power generation facility on the property. Thereafter, however, the Board rescinded the 2000 Resolution, and Invenergy was forced to pay substantially higher taxes for 2016. Invenergy alleged that the tax abatement provided by the 2000 Resolution "ran with the land," as the resolution did not restrict the benefits to a particular user. Invenergy alleged that, when it purchased the property, it acquired LSP-Nelson Energy's rights to the tax abatement. Invenergy stated that numerous regulating bodies permitted it to build the power generation facility under the permits and approvals previously granted to LSP-Nelson Energy. Invenergy believed that the Board lacked the authority to enter the 2017 Resolution and had not provided proper notice of the meeting at which it adopted that resolution, as required by section 2.02 of the Open Meetings Act (5 ILCS 120/2.02 (West 2016)). Invenergy stated that it paid all general taxes for 2016 to avoid penalties and preserve its right to file this suit. Count I stated a tax objection claim, requesting a refund of taxes that were overpaid due to the improper withholding of the tax abatement. Count II sought a declaratory judgment that Invenergy was entitled to the tax abatement for the years 2017 through 2020.

¶ 7     On February 1, 2018, the Board filed a motion to dismiss Invenergy's complaint, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)). The Board noted that section 18-165 of the Tax Code states that a tax "abatement shall not exceed a period of 10 years." 35 ILCS 200/18-165 (West 2016). The Board essentially argued that the 2000 Resolution expired in 2010 and thus Invenergy was not entitled to the tax abatement in 2016. The Board further argued that section 18-165 also provides that abatement authority cannot be exercised until "after the [public body determines] the assessed valuation of its property." *Id.* The Board asserted that it determined the assessed valuation of its property in the year 2000 and that this assessment could not support an abatement 16 years later. The Board also asserted that it adopted the 2007 policy to govern abatement of taxes going forward and that in 2017 it adopted the 2017 Resolution, affirming that any tax abatement on the property was to be governed by the 2007 policy, not the 2000 Resolution. The Board noted that the complaint did not allege that the 2007 policy and the 2017 Resolution were arbitrary, unreasonable, or capricious.

¶ 8     In response, Invenergy argued that the 10-year limitation in section 18-165 of the Tax Code set the time period only for the number of years a tax abatement actually could be granted, but did not set limits on when a resolution to abate taxes could be enacted and when an actual tax abatement could first be applied. Invenergy also argued that the "assessment" required by the Tax Code referred to the assessment that an assessor performs after improvements are completed on a property, not to an assessment performed when an abatement agreement is entered. In response to the Board's alleged adoption of the 2007 policy, Invenergy noted that the policy was not attached to its complaint and was not a basis for a section 2-615 dismissal. Invenergy argued that its complaint properly alleged that the 2017 Resolution was invalid for lack of proper notice of the meeting at which the resolution was passed. Invenergy also argued that the 2007 policy and the 2017 Resolution applied only prospectively but did not rescind the 2000 Resolution. Invenergy further argued that, even if the later policy and resolution applied retroactively, they still did not support dismissal of the complaint because it properly

[1]The claims against East Coloma-Nelson School District No. 20 are not at issue in this appeal.

alleged that such action was arbitrary, unreasonable, and capricious in light of Invenergy's significant investment in the property.

¶ 9    On September 17, 2018, following a hearing, the trial court partially granted the Board's section 2-615 motion to dismiss. The trial court noted that, pursuant to the Tax Code, tax abatements could not exceed 10 years and Invenergy was seeking the application of the 2000 Resolution 16 years after its effective date. The trial court found that, under the 2000 Resolution, the parties clearly contemplated that the abatement would be "granted within a reasonable period of time." The trial court also noted that the 2000 Resolution provided that the assessed valuation of the property would be the triggering event for the tax abatement, but it found that there was no way to determine the assessed valuation since the project was not completed and placed in service for almost 16 years. The trial court dismissed count I of the complaint and continued the matter for a pretrial conference on count II.

¶ 10    On October 10, 2018, Invenergy filed a motion to reconsider and for clarification. Invenergy argued that the trial court improperly granted the motion to dismiss, based on a "reasonableness" standard that was not presented by any of the parties, and that, even if such a standard applied, it would be a question of fact and not a proper basis for dismissal under section 2-615. Invenergy also argued that the statute clearly contemplated that the assessed valuation was to be determined after the improvements were made and that this assessment would be compared to the base year set forth in the 2000 Resolution. Finally, Invenergy requested clarification as to whether the dismissal was with prejudice and, if not, requested 28 days to file an amended complaint.

¶ 11    On February 5, 2019, following a hearing, the trial court denied the motion to reconsider. The trial court found that the 2000 Resolution specifically granted the tax abatement to "LSP-Nelson Energy" and was effective only if LSP-Nelson Energy completed the project "within the State of Illinois in the immediately preceding calendar year." Noting that the Board modified its abatement policy in 2007, the trial court found that Invenergy had not applied for an abatement in accord with the 2007 policy. Finally, the trial court found that Invenergy had not presented sufficient facts supporting estoppel. The trial court granted Invenergy 28 days to file an amended complaint.

¶ 12    On March 25, 2019, the Board filed a motion for the entry of a final judgment dismissing the suit. The Board noted that Invenergy had not filed an amended complaint. On April 11, 2019, following a hearing, the trial court granted the motion by dismissing both counts of the suit and entering a final judgment in favor of the Board. Thereafter, Invenergy filed a timely notice of appeal.

¶ 13                                  II. ANALYSIS
¶ 14    On appeal, Invenergy argues that the trial court erred in dismissing its complaint, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)). A motion to dismiss under section 2-615 challenges the legal sufficiency of a complaint based on facial defects of the complaint. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382 (2004). The critical inquiry is whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action on which relief may be granted. *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002). An exhibit attached to a complaint becomes part of the pleading, and when the exhibit contradicts the allegations in the complaint, the exhibit controls. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18. A trial court should grant a

section 2-615 motion to dismiss only if "it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). A court must accept as true "all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Id.* This court conducts *de novo* review of a trial court's ruling on a motion to dismiss. *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 342 (2005). On review, "this court may affirm the trial court's judgment on any basis that is supported by the record." *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051 (2008).

¶ 15    In the present case, one of the trial court's reasons for granting the dismissal was that the 2000 Resolution specifically granted the tax abatement to LSP-Nelson Energy, and not to Invenergy. Invenergy argues that the dismissal on this basis was improper because the 2000 Resolution "ran with the land." Invenergy alleged in its complaint that the 2000 Resolution ran with the land by virtue of its unambiguous terms, namely, that it focused on the property and did not restrict which entity would benefit from the abatement.

¶ 16    When an attachment to a pleading is a contract or other instrument, such as the 2000 Resolution, the proper construction of that instrument is a matter of law. *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 24. Upon review of the 2000 Resolution, we hold that its plain language does not support the allegation that it ran with the land. The 2000 Resolution specifically stated that it was granted to "LSP-Nelson Energy." It was essentially an offer by the Board, to LSP-Nelson Energy, to abate taxes if LSP-Nelson Energy met certain conditions. Although the 2000 Resolution included a property description of the real estate at issue as an identifier, that is not enough to establish that the resolution would run with the land. The 2000 Resolution does not state that it would run with the land or that the benefits of the resolution would pass to LSP-Nelson Energy's heirs, successors, or assigns. There was simply no indication that the offer extended to LSP-Nelson Energy would also extend to an outside party such as Invenergy.

¶ 17    Moreover, "[t]he fundamental theory of our tax structure is that all taxable property should bear its fair share of the cost and expense of government." *Mid-American Growers, Inc. v. Department of Revenue*, 143 Ill. App. 3d 600, 602 (1986). It is well settled that the statutes granting tax exemptions on property must be strictly construed in favor of taxation and that a party claiming an exemption has the burden to conclusively prove that it is entitled to an exemption. *Forest Preserve District of Du Page County v. Department of Revenue*, 266 Ill. App. 3d 264, 270 (1994). We see no reason why the same principles should not apply to a tax abatement. Here, as there is no indication in the 2000 Resolution that it would run with the land, we must construe it in favor of taxation. *Id.* Accordingly, because the plain language of the 2000 Resolution does not indicate that the applicable tax abatement would run with the land, and because exhibits to a complaint control over the allegations of a complaint (*Gagnon*, 2012 IL App (1st) 120645, ¶ 18), the trial court did not err in dismissing Invenergy's complaint on this basis.

¶ 18    Invenergy argues that whether the 2000 Resolution ran with the land was a question of fact that precludes dismissal under section 2-615. In support, Invenergy cites *Bank of America, N.A. v. Cannonball LLC*, 2014 IL App (2d) 130858. The issue in that case was whether certain agreements between the developer of a strip mall and an anchor store owner, agreements that the original lender was aware of when it entered into a construction loan agreement with the developer, were covenants that ran with the land and were thus binding on the successor lender. *Id.* ¶ 20. The court cited three factors to consider in determining whether a covenant runs with

the land, namely, "whether: (1) the grantee and the grantor intended the covenant to run with the land; (2) the covenant touches and concerns the land; and (3) there is privity of estate between the party claiming the benefit and the party resting under the burden of the covenant." *Id.* ¶ 22 (citing *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 188 (1983)). We find *Cannonball* distinguishable because, in addressing the first factor, the court noted that the agreements at issue specifically stated that the covenants would run with the land. *Id.* ¶ 23. In the present case, however, there are no agreements at issue, only the offer set forth in the 2000 Resolution, which did not state that the tax abatement would run with the land.

¶ 19    Despite Invenergy's contention to the contrary, the complaint failed to raise a question of fact as to whether the 2000 Resolution ran with the land. The complaint alleged only that the plain language of the 2000 Resolution supported a determination that the tax abatement ran with the land. However, as explained above, there was no language in the 2000 Resolution indicating that it would run with the land. Additionally, the complaint did not include any other allegations to support that the tax abatement ran with the land, such as discussions that occurred when the 2000 Resolution was passed, representations or notices during or following the purchase of the property from LSP-Nelson Energy's bankruptcy estate,[2] or later discussions that Invenergy might have had with the Board. Further, while Invenergy asserts that the 2000 Resolution ran with the land because the resolution was filed with the county clerk of Lee County, we find it more significant that there is no allegation that the resolution was recorded with the deed to the property. Accordingly, the complaint simply did not include sufficient allegations to raise a question of fact as to whether the tax abatement in the 2000 Resolution ran with the land.

¶ 20    Because we affirm the dismissal on the basis that the 2000 Resolution did not run with the land, we need not address the propriety of the trial court's alternative grounds for dismissal. Further, we note that Invenergy filed a motion to strike portions of the Board's appellee brief because the Board attached a document in an appendix that was not part of the record on appeal, specifically, a copy of section 4:12 of the Board's policy manual. However, because that document is not relevant to our determination on appeal, we deny the motion as moot. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10 (a reviewing court should not decide moot questions, render advisory opinions, or consider issues where a ruling will not affect the result).

¶ 21                              III. CONCLUSION
¶ 22    For the foregoing reasons, the judgment of the circuit court of Lee County is affirmed.

¶ 23    Affirmed.

---

[2]If Invenergy believed that the 2000 Resolution ran with the land and was binding on the Board, it should have provided some notice to the Board following the purchase of the property from LSP-Nelson Energy's bankruptcy estate. See, *e.g.*, *Rosewood Corp. v. Illinois Bell Telephone Co.*, 38 Ill. 2d 29, 31 (1967) (where written instrument between prior owner of property and telephone company permitted construction and maintenance of poles, notice was required for written instrument to be binding on subsequent purchaser).