2023 IL App (1st) 220645-U

SIXTH DIVISION
March 24, 2023

No. 1-22-0645

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the
limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MICHAEL P. MAZZA, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2020 CH 05008 |
| | ) | |
| OIL-DRI CORPORATION OF AMERICA, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices C.A. Walker and Tailor concurred in the judgment.

**O R D E R**

¶ 1   *Held*: Judgment on the pleadings in law firm's favor is affirmed where (1) the firm's
former client was collaterally estopped from relitigating the enforceability of a
dispute resolution provision, (2) the dispute resolution provision encompassed
disputes over the scope of the provision, and (3) the circuit court made no error in
compelling the parties to jointly select a mediator where a good faith effort to do
so had not yet been attempted.

¶ 2   Plaintiff Michael P. Mazza, LLC (Mazza), a law firm, filed a one-count declaratory

judgment action against its former client, Oil-Dri Corporation of America (Oil-Dri), seeking to

enforce the alternative dispute resolution (ADR) provision of its legal fee agreement. Oil-Dri

moved to dismiss the case, arguing that the ADR provision in its agreement with Mazza was indefinite, unenforceable, and impossible to perform. The circuit court denied the motion, concluding that the language of the ADR provision was sufficiently definite to be enforceable. Mazza then filed a motion for judgment on the pleadings, which the circuit court granted in favor of Mazza. Oil-Dri now appeals. For the reasons set forth in this order, we affirm.

¶ 3                                I. BACKGROUND

¶ 4      Mazza is an Illinois-based law firm and Oil-Dri is a Chicago-based manufacturing corporation. For several years, Mazza provided patent-related legal services to Oil-Dri. The relationship between the parties was structured according to two separate fee agreements. The first agreement, signed by the parties on November 20, 2014 (2014 Agreement), was for legal services related to the licensing and enforcement of U.S. Patent No. 5,975,019 (the '019 patent). The second agreement, signed on September 23, 2016 (2016 Agreement), was for legal services related to the licensing and enforcement of a separate category of "lightweight" patents held by Oil-Dri.

¶ 5      The termination clause of the 2016 Agreement read as follows:

"If we withdraw or you terminate our representation and if substantial progress has been made toward resolution of any matter in a way that is financially beneficial to you at the time of our withdrawal or if any litigation reaches an advanced state, we shall negotiate in good faith for a payment to us commensurate with the services rendered, taking into account our normal hourly fees for that matter and the payment that would have been due under paragraphs 1-4."

Paragraphs 1-4 of the 2016 Agreement, in turn, established a partial contingency fee arrangement between the parties whereby Mazza would bill Oil-Dri at a discounted hourly rate for "all litigation-related activity concerning the [lightweight] Patents," in exchange for the right to a fixed

2

percentage of any recovery from any "licenses, negotiations, settlements, sales, assignments, transfers, or judgment that involve the Patents." Pursuant to this partial contingency formula, Mazza was entitled to 25% of the first $25 million in recoveries, plus 5% of any additional recoveries.

¶ 6 Both the 2014 Agreement and the 2016 Agreement contained the following provision regarding dispute resolution:

"This Agreement shall be construed under the laws of the State of Illinois and any disputes concerning the Agreement, our fees or that relate in any way to our representation of you, including any claims relating to our billings or for breach of fiduciary duty, professional negligence or malpractice or other disputes over our representation, shall be resolved in Chicago, Illinois through a summary procedure involving limited discovery in which we will jointly appoint a qualified mediator who specializes in such matters to promptly resolve any disputes through private mediation, whose decision shall be final and binding upon the parties ***. Because this procedure of dispute resolution involves a waiver of your rights and ours, we jointly acknowledge that this alternative procedure for dispute resolution waives our respective rights to seek relief through litigation or to have a trial by jury or to conduct full discovery or to appeal, or to otherwise exercise rights available in litigation, rather than through private mediation. It is, therefore, important that this matter be carefully discussed with independent counsel and only after that review has been completed can we jointly agree to this alternative dispute-resolution procedure. In the event agreement cannot be reached on a suitable mediator, we shall jointly seek the assistance of the Illinois Bar Association for the selection of a suitable person."

¶ 7 In April 2019, Oil-Dri terminated its relationship with Mazza.

¶ 8    The following year, in June 2020, Mazza learned that Oil-Dri had entered into a confidential licensing deal involving its lightweight patents (the subject of its 2016 Agreement), pursuant to which Oil-Dri stood to receive a $13 million payment.

¶ 9    Upon learning about this transaction, Mazza sent a demand letter to Oil-Dri invoking the language from the termination provision of the 2016 Agreement, which specified that should Oil-Dri terminate its relationship with Mazza, Mazza would still be entitled to remuneration for any matter on which it had made substantial progress toward resolution that was "financially beneficial" to Oil-Dri "at the time of [the firm's] withdrawal or if any litigation reache[d] an advanced state." Mazza claimed in its letter that it had laid the groundwork for Oil-Dri's confidential licensing deal and that the parties would not have been able to reach their agreement without the firm's involvement. Accordingly, it sought remuneration from Oil-Dri, in accordance with the partial contingency formula laid out in paragraphs 1-4 of the 2016 Agreement, in the amount of $3.25 million (25% of the $13 million payment). The letter gave Oil-Dri seven days to respond.

¶ 10    Oil-Dri responded to the letter through its counsel, characterizing the request for $3.25 million as not being made in good faith and requesting that Mazza provide more specific information to aid Oil-Dri's analysis "of whether and to what extent compensation [was] warranted." Specifically, Oil-Dri asked for an itemization of the services Mazza had performed on the lightweight patents after June 2017, when an infringement case involving one of those patents had been dismissed. According to Oil-Dri, that infringement case, which was "resolved at an early stage in a manner decidedly unfavorable to Oil-Dri," was the only legal work Mazza had performed in relation to the lightweight patents and it had already paid Mazza in full for its services related to that litigation. Following the dismissal of that infringement action in 2017, Oil-Dri claimed,

Mazza had "conducted no work related to the Lightweight Patents." In addition to the itemization of services, Oil-Dri also asked Mazza for "any work product provided to Oil-Dri in connection with those post-June 2017 services" and a more substantive explanation for why, given the circumstances, it thought it was entitled to $3.25 million.

¶ 11    Mazza responded the next day stating that it could not provide the information Oil-Dri requested without more specific details about the company's confidential licensing deal. The correspondence gradually became more heated in a series of subsequent exchanges and, on July 8, 2020, Mazza contacted Judicial Arbitration and Mediation Services, Inc. (JAMS) to inquire about the availability of specific mediators. Oil-Dri responded that, given Mazza's failure to provide basic information on why it believed it was entitled to additional compensation, any discussion of mediation was premature.

¶ 12    On July 17, 2020, Mazza filed in the circuit court the declaratory action that is before us now, seeking an order requiring Oil-Dri to jointly select a mediator and enter into binding mediation to settle the fee dispute. Mazza alleged that during its engagement with Oil-Dri, the firm had spent more than 1,650 hours enhancing the value of the patents involved in the $13 million deal.

¶ 13    On August 25, 2020, Oil-Dri moved to dismiss the suit, contending that the ADR provision Mazza sought to enforce was unenforceable because the binding mediation procedure it called for was "a contradiction in terms and contrary to Illinois cases and dispute resolution statutes." Oil-Dri also highlighted language in the agreement which specified that in the event the parties failed to agree upon a mediator, they were to engage the "Illinois Bar Association," an organization which Oil-Dri noted did not exist. "Simply put," Oil-Dri asserted, "the dispute resolution provision contains indefinite and impossible material terms, so it cannot be enforced." In the alternative, Oil-

Dri argued that even if the ADR provision was enforceable, Mazza's complaint nonetheless merited dismissal because the firm failed to negotiate in good faith, or establish that it had made substantial progress on the relevant patents prior to termination, both of which were "conditions precedent" for entering any sort of dispute resolution process.

¶ 14     On August 31, 2020, a few days after filing its motion to dismiss Mazza's declaratory judgment action, Oil-Dri filed a separate lawsuit against Mazza in the circuit court (Case No. 2020 L 9327), alleging legal malpractice for services performed under the parties' 2014 Agreement. The gist of Oil-Dri's allegations in that case was that Mazza had mishandled an infringement lawsuit against Nestle Purina involving Patent '019. While Oil-Dri ultimately obtained a $3 million jury verdict in that case, it argued that the result was "not a victory in any sense," as its expert had testified that it was owed reasonable royalties exceeding $73 million. Over the course of the Patent '019 litigation, which Oil-Dri characterizes as "disastrous," it paid Mazza over $5 million dollars.

¶ 15     On December 9, 2020, Mazza moved to dismiss Oil-Dri's malpractice suit, arguing that, like the fee dispute, this dispute over its performance in the Patent '019 litigation was also subject to binding mediation.

¶ 16     The circuit court in the malpractice suit agreed with Mazza that the ADR provision was enforceable as to Oil-Dri's malpractice claim, and, on March 19, 2021, it entered an order granting Mazza's motion to dismiss and request to compel ADR. In an order denying Oil-Dri's motion to reconsider, the court reiterated its prior finding that the binding mediation clause was "sufficiently definite" and that it "clearly mandate[d] a decision by the mediator on the merits of [Oil-Dri's] claims." Oil-Dri did not appeal but instead complied with the court's order and entered ADR proceedings to resolve its malpractice claims against Mazza. Meanwhile, the declaratory action at issue here remained unresolved and pending.

¶ 17    On October 13, 2022, the judge presiding over this case—Mazza's declaratory suit—denied Oil-Dri's motion to dismiss, rejecting Oil-Dri's argument that the ADR provision was ambiguous and unenforceable as to the parties' fee dispute. It explained that it was "not persuaded that a reference to the 'Illinois Bar Association' to choose a mediator in the absence of agreement introduced an ambiguity, as any reader could reasonably infer it refers to the Illinois State Bar Association." The court concluded that the language in the provision was "sufficiently definite to evidence the parties' agreement to submit the matter to the alternative dispute resolution procedures it outline[d], and it [was] not unenforceable on those grounds."

¶ 18    Given this result, Mazza moved for judgment on the pleadings. In its motion, Mazza referenced the result reached in the malpractice suit—where a different court had found the ADR provision enforceable—and asserted that because Oil-Dri did not appeal that ruling, it was collaterally estopped from relitigating the enforceability of the provision. Oil-Dri filed its opposition to Mazza's motion for judgment on the pleadings and its own cross-motion for summary judgment on March 22, 2022.

¶ 19    On April 8, 2022, the circuit court granted Mazza's motion for judgment on the pleadings and denied Oil-Dri's cross-motion for summary judgment. The court reiterated the conclusion reached in its prior ruling denying Oil-Dri's motion to dismiss that the "binding mediation language in the Agreement [was] sufficiently definite and certain," such that "it was not unenforceable as a matter of law." The circuit court also rejected Oil-Dri's argument in the alternative about Mazza's purported failure to satisfy conditions precedent, explaining that whether Mazza had negotiated in good faith or had made "substantial progress" on the relevant patents prior to termination were both issues that were "clearly themselves subject to [ADR]." The court explained that it "need only find the claims raised are within the scope of a valid agreement

to submit the matter to [ADR]; any disputes on the scope or details thereof must then be decided within those procedures." Finally, the circuit court noted that it did not need to reach the collateral estoppel argument raised by Mazza, as it had resolved the issues presented on the merits.

¶ 20    This appeal followed.

¶ 21                                II. JURISDICTION

¶ 22    The circuit court issued its order granting Mazza's motion for judgment on the pleadings on April 8, 2022. Oil-Dri timely filed its notice of appeal on May 6, 2022. We have jurisdiction over this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments in civil cases.

¶ 23                                III. ANALYSIS

¶ 24    On appeal, Oil-Dri makes several arguments challenging the circuit court's rulings denying its motion to dismiss and granting Mazza's motion for judgment on the pleadings. First, it insists that the ADR provision cited by Mazza is unenforceable because the "binding mediation" procedure it elaborates is contrary to Illinois law and because the bar association that the parties were required to seek assistance from under the terms of the agreement was defunct. Next, it reasserts its arguments in the alternative that even if the ADR provision is valid, it is not applicable here because Mazza failed to satisfy the "conditions precedent" of conferring in good faith or establishing that "substantial progress" had been made on the relevant patents at the time of termination. Finally, Oil-Dri argues that the circuit court's order forcing the parties to jointly select a mediator was contrary to the terms of their agreement. We address each argument in turn.

¶ 25    When reviewing a ruling on a motion to dismiss, or an order granting judgment on the pleadings, we may affirm on any basis found in the record. See *Lofthouse v. Suburban Trust and Savings Bank of Oak Park*, 185 Ill. App. 3d 889, 892 (1989); *Invenergy Nelson LLC v. Rock Falls*

8

*Township High School District No. 301*, 2020 IL App (2d) 190374, ¶ 14. In both cases, our review is *de novo.* See *id.*; *Core Construction Services of Illinois, Inc. v. Zurich American Insurance Co.*, 2019 IL App (4th) 180411, ¶ 24.

¶ 26                              A. The Enforceability of the ADR Provision

¶ 27    In our view, whether the ADR provision is enforceable is an issue that was already resolved in Mazza's favor in Oil-Dri's malpractice suit. As Oil-Dri was already awarded a full and fair opportunity to challenge the enforceability of the ADR provision in that forum, we hold that in the interests of fairness and judicial economy, it is collaterally estopped from continuing to challenge the validity of that provision here.

¶ 28    Collateral estoppel, also referred to as issue preclusion, is an equitable doctrine that precludes a party from relitigating an issue decided in a prior proceeding. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 294 (1995). When properly applied, the doctrine serves to "promote fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions." *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). There are three basic threshold requirements for collateral estoppel: "(1) the issue decided in the prior adjudication is identical to the one presented in the current suit; (2) a final judgment on the merits was entered in the prior adjudication; and (3) the party against whom estoppel is asserted was a party to or was in privity with a party to the prior adjudication." *Ford Motor Credit Co. v. Cornfield*, 395 Ill. App. 3d 896, 910 (2009).

¶ 29    Here, the second and third requirements are not in dispute, but Oil-Dri contests the first— the existence of a common and controlling issue. Oil-Dri's position is that the malpractice suit "decided a very narrow issue: whether Oil-Dri's legal malpractice claim arising under the 2014 Agreement was subject to the parties' mediation clause." The instant case, in contrast, involves

different issues and presents different facts for the court to consider. Specifically, Oil-Dri writes, "Mazza's purported unpaid fee claims arise under a separate contract and are subject to separate conditions precedent than the claim at issue in the prior litigation," which involved "a legal malpractice claim against Mazza for his negligence related to a federal jury trial." We disagree.

¶ 30   Oil-Dri cannot avoid the application of collateral estoppel merely by pointing out that the malpractice suit arose under the 2014 Agreement while the fee dispute arose under the 2016 Agreement. Even if these two cases did arise under different agreements, collateral estoppel still applies because the two cases turn on the same issue: the enforceability of an identical dispute resolution provision. We were confronted by a similar fact pattern in *Service Systems Corp. v. Van Bortel*, 174 Ill. App. 3d 412 (1988).

¶ 31   In *Service Systems Corp.*, an employer sued several former employees in the circuit court seeking to enforce a non-compete provision from the employees' former contract with the employer. *Id.* at 416. Prior to the employer's lawsuit in the circuit court, however, the employer had been a defendant in a federal lawsuit filed by a different former employee, who sought a declaratory judgment that the same non-compete provision was void and unenforceable. *Id.* at 417. The federal court agreed with the plaintiff and held that the employer's noncompete provision was unenforceable. *Id.* In light of the result reached in the federal case, we found that the employer was collaterally estopped from relitigating the issue of the validity of the noncompete provision even though the two cases involved different employment contracts. *Id.* at 418. The same result is warranted here. As Oil-Dri was awarded a full and fair opportunity to challenge the enforceability of the ADR provision in the malpractice suit, and it did not appeal the circuit court's order finding that the provision was enforceable, it is precluded from continuing to argue that the provision is unenforceable. See *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989) ("The policy underlying

collateral estoppel is that a party is entitled to only one fair opportunity to litigate an issue.").

¶ 32    Oil-Dri argues that the reasoning from *Service Systems Corp.* does not apply here because in that case, the court did not have to consider "whether new claims, arising from different contract terms and defenses, were subject to collateral estoppel." But this misses the point. The applicability of collateral estoppel does not turn on whether two causes of action involve precisely the same facts or claims. Rather, collateral estoppel applies where "a party participates in two separate and consecutive cases arising out of different causes of action and some controlling factor or question material to the determination of both cases has been adjudicated by a court of competent jurisdiction against the party in the former suit." *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1162 (2005). Here, although the two cases involve different contracts and different causes of action, the "controlling factor" in both is the enforceability of the identical dispute resolution provision and the validity of the "binding mediation" procedure it elaborates.

¶ 33    Due to the result reached in the malpractice case, Oil-Dri is estopped from continuing to litigate the validity of the dispute resolution provision in the instant case.

¶ 34                    B. Satisfaction of "Conditions Precedent"

¶ 35    Oil-Dri next argues that even if the ADR provision is valid and enforceable, it does not apply as to Mazza's claim for fees because Mazza failed to establish the "conditions precedent" to qualify for ADR. We reject this argument.

¶ 36    The language of the ADR provision is quite broad. It mandates binding mediation between the parties for "*any* disputes concerning the Agreement, our fees or that relate in any way to our representation of you, including any claims relating to our billings or for breach of fiduciary duty, professional negligence or malpractice or other disputes over our representation." (Emphasis added). Based on this language, the only requisite "condition precedent" for either party invoking

the ADR provision is the existence of *any* dispute concerning the 2016 Agreement, including disputes over the scope of the ADR provision itself and whether a party qualifies for it.

¶ 37    We agree with the circuit court that whether Mazza engaged in good faith negotiation or made "substantial progress" on the patents involved in Oil-Dri's $13 million deal prior to its termination are both issues that are "clearly themselves subject to [ADR]."

¶ 38                                C. Jointly Selecting a Mediator

¶ 39    Oil-Dri's final argument is that the circuit court erred in granting Mazza's judgment on the pleadings because "[w]here, as here, the agreement states that the parties must 'jointly' appoint a mediator, and the parties cannot agree on a mediator, and there is no express 'method of appointment of arbitrators' outlined in the agreement, Illinois law compels the court to terminate the arbitration agreement." The problem with this argument is the presupposition that "the parties cannot agree on a mediator." We see no reason to treat Oil-Dri's assertion as a foregone conclusion. As the circuit court explained below, when it rejected this same argument,

> "[Oil-Dri] has at this time made no apparent effort, let alone a good faith effort, to engage with the procedures of the ADR Provision, and the court cannot decline to enforce it based on [Oil-Dri's] mere speculation that the parties will be unable to agree upon a mediator *** . [Oil-Dri] may be able to raise such a claim for termination of the Agreement *after* a genuine, good faith attempt to engage with its procedures, but it is not a basis for judgment now."

We agree.

¶ 40    Up to this point, Oil-Dri has had little incentive to try to work with Mazza to select a mutually agreeable mediator, as its efforts were focused entirely on arguing that the ADR provision mandating that procedure was void and unenforceable. Now that the circuit court has found that

ADR provision to be enforceable, a ruling which we affirm, the terrain has shifted. It would be premature for us to conclude that the parties cannot come to an agreement on a suitable mediator when they have yet to make a good faith effort to do so. We therefore reject Oil-Dri's argument that the circuit court erred when it refused to terminate the agreement based on the fact that the parties could not agree on a mediator.

¶ 41                                                    IV. CONCLUSION

¶ 42     For the foregoing reasons, we affirm the circuit court order granting Mazza's motion for judgment on the pleadings and denying Oil-Dri's cross-motion for summary judgment.

¶ 43     Affirmed.